In re the Marriage of: Dawn Patrice BARBER, Respondent,

v.

Michael Steven BARBER, Appellant.

No. WD 38637.

Missouri Court of Appeals, Western District.

Feb. 2, 1988.

Respondent's Rehearing Denied March 29, 1988.

Appellant's Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1988.

Application to Transfer Denied May 17, 1988,

Mary Ann Drape, Kansas City, for appellant.

John W. Dennie, Jr., Karen M. DeLuccie, Independence, for respondent.

Before KENNEDY, C.J., and LOWENSTEIN and GAITAN, JJ.

KENNEDY, Chief Judge.

Appellant husband, Michael, appeals from the property division, maintenance, child support and attorneys fee provisions of a decree, dissolving his nine-year marriage to Dawn, during the last three years of which they were separated.

A second appeal from the court's award of $3,850 for Dawn's attorney's fees on appeal has been consolidated with the first.

The parties were married November 26, 1977, when Michael was 18 and Dawn was 17. They were seniors in high school. Dawn was five months pregnant and their first child, a son, was born March 30, 1978. There were two other children, the youngest born after the parties' separation, which occurred September 1, 1983. Michael throughout the marriage was employed by Barber and Sons Tobacco Co., a corporation whose sole or principal stockholder was his father. The corporation had diverse interests, including a farm or farms. Michael was employed as farm manager. Throughout the time they lived together the couple lived rent free in houses owned by the Barber and Sons corporation.

The marriage was a stormy one. Michael was addicted even from his high school days to the use of alcohol, and he also used other drugs. He was volatile and abusive toward Dawn and more than once threatened her with a gun. As noted, they separated on September 1, 1983. Dawn filed this dissolution suit September 27, 1983. The case was tried on December 13, 1984, and on January 30, 1985. The decree was entered more than 18 months later, on August 7, 1986.

### Property Division—Interest in methane plant

■ We will first take up Michael's complaints about the property division. He does not complain of any disproportionate division of marital property. First, he complains about the award to him of his interest in "Clovis III", a methane plant located in Clovis, New Mexico, in which he had a ¹⁄₁₅ share. His grounds are that the court did not designate it as marital or nonmarital property; that the court had no jurisdiction over it since it was in a Chapter 11 Bankruptcy proceeding; and that it was in any case a gift to him and therefore nonmarital property.

Assuming that what Michael says is true, he has not shown us how he was prejudiced. It was awarded to him. The only evidence of its value was that it had no value. It was a tax shelter, which had generated large tax losses for him—$8,700 in 1982 and $41,098 in 1983. There is nothing to indicate that its award to him in any way skewed or distorted the property division. Without some prejudice to himself, he has no ground for complaint. *Rasmussen v. Rasmussen*, 627 S.W.2d 117 (Mo. App.1982).

### Property Division—Kawasaki motorcycle

What is true of the methane plant interest is true also of the Kawasaki motorcycle which was awarded to Michael. He urges it was nonmarital property. In this he is undoubtedly correct; the machine was given him by his father as a Christmas present. But it was awarded to him, not to Dawn. Once again, as in the case of the methane plant interest, there is nothing to indicate the property distribution was thrown out of balance by the award of this item to Michael. *Id.* He suffers no prejudice and we can give him no relief on this point.

### Maintenance in gross—Corvette automobile

■ One of the components of the wife's $36,750 maintenance in gross award was "$9,500 as and for one-half of the sales proceeds received by Respondent due to the sale of the 1984 Corvette automobile". Michael says that the court had no jurisdiction to make such an award, since the car

belonged to the Barber and Sons corporation.

There is a dispute in the evidence on this point. Dawn listed the car as marital property in a schedule filed with the court. Then she testified:

Q: And then you have a 1983 Chevrolet Corvette. Is that any longer in existence?

A. No. I found out since Michael sold it.

Steve Barber, Michael's uncle, testified that in the fall of 1984 Michael had shown him a Barber and Sons check made out to him for $19,000, which Michael told Steve he had received from the sale of a 1984 Corvette.

Michael's father testified that the Corvette was one of 80 vehicles titled in the name of the Barber and Sons Corporation and used by employees.

There was no other testimony about the Corvette, and especially about the $19,000 check. Michael although present at the trial did not testify. Later (March 31, 1986) his counsel sent to the court documentation tending to show that the Corvette had been purchased by the Barber and Sons corporation and titled in the corporation's name. This documentation is included in the legal file, but this as appellant himself reminds us makes up no part of the record and is entitled to no consideration. *Collins v. Vernon*, 512 S.W.2d 470, 473 (Mo.App.1974).

In this state of the record we are unable to say that the trial court erred in awarding Dawn the equivalent of one-half the proceeds of the sale of the Corvette.

### Maintenance in gross—Mercedes automobile

Michael complains of the court's treatment of a 1978 Mercedes auto as marital property and alternatively of its valuation. He says the court should not have included one-half its value in the maintenance in gross award to Dawn.

There is ample evidence to support the court's treatment of the car as marital property. It was a high school graduation gift from Michael's father. Michael and Dawn, who had been married the preceding November, graduated from high school at the same time. Although the Mercedes was titled in Michael's name, Dawn testified positively it was a gift to both of them. It had been presented in the presence of 30 people. "I even have the card," she testified.

The court awarded Dawn $8,750 "as and for one-half of the value of the parties' 1978 Mercedes automobile." The car had been listed at a value of $17,300 on Dawn's "Statement of Marital and Non–Marital Property, Income and Expenses", dated October 29, 1984. There was no other testimony than that. On the other hand, there was in evidence a copy of an Aristocrat Motor Company check for $7,500, dated July 11, 1984, payable to Michael, containing the memorandum, "Payment in full for 1978 Mercedes–Benz 300D". This check was identified by Michael's father. There was no other testimony about it. The evidence of the value of this automobile is thus left in an unsatisfactory state. We conclude, however, that its sale price was more reliable evidence of its value than the appearance of the figure $17,300 on Dawn's statement. Neither figure was subjected to any cross-examination. We will reduce Dawn's maintenance in gross award by the difference between the $8,750 awarded and the $3,750 which should have been awarded, or $5,000.

### Support and maintenance

We turn from the property division to the support and maintenance award totalling $1,300 per month, including: support for A.J., $400.00; support for each of the other two children, $300.00; and maintenance, $300.00. Michael claims this is excessive.

Michael does not argue that the award exceeds the needs of Dawn and the children. The eldest son, nine-year-old A.J., has cystic fibrosis. He requires daily therapy which Dawn is trained to administer. Dawn, married to Michael while still a high school student, was never employed during their marriage; she testified that Michael forbade it. She never attended college and is not prepared by training or experience for any employment except of a low-paying

kind. The youngest of the three children was born after the separation of the parties. Michael does not contend that Dawn should get employment.

Michael's argument is that the support and maintenance are beyond his ability to pay. Of course, it is the task of the court to balance the needs of the wife and children against the husband's ability to pay, § 452.335(2), RSMo, 1986. On the question of Michael's ability to pay, the record is as unsatisfying as on the rest. There is no testimony from Michael. He is employed by Barber and Sons, as a truck driver in the corporation's quarry operations. His wages during the time he has worked for Barber and Sons—so far as the record shows he has never had any other employer—have been in the $18,000–$19,000 range, omitting 1980, when he had received a bonus of $35,000, and omitting 1984 when for a good part of the year he was not working for Barber and Sons. There is no evidence of Michael's own needs. Presumably they are modest, for he lives with his parents, or rent-free in premises provided by them.

■ One's ability to pay is not measured solely by wages or salaries received. *Reeber v. Reeber*, 680 S.W.2d 358 (Mo.App. 1984). There is a good deal of evidence from which the court could conclude that Michael had other means. He had $20,000 in a certificate of deposit as late as the spring of 1984. There is no evidence what became of this. Barber and Sons owed him an unspecified amount of money for which he received interest of $7,576.44 in 1981, $6,884.76 in 1982; and $1,169.92 in 1983. There is no evidence that this money had been disposed of. While one's earnings from services rendered are in most cases the most important factor in one's ability to pay, the court may consider other resources for maintenance and child support; nothing is exempt from these primary calls upon a parent's resources. *Bull v. Bull*, 634 S.W.2d 228 (Mo.App.1982).

On the record before us, we decline to alter the trial court's award of maintenance and child support.

*Debts incurred by Dawn after separation*

■ Next, Michael says the court's decree is not final because the debts incurred by Dawn and ordered to be paid by him are not set out in exact amounts, but only in approximate amounts. It is true that an in personam judgment for money must be exact, *see Hopkins v. Hopkins*, 626 S.W.2d 389, 392 (Mo.App.1981), but that principle does not apply here. The debts are identified by name of creditor and by approximate amounts, and this is sufficient to identify them for the purpose of this decree. There are three debts which the decree specifies as "unknown" as to amount. These are all for medical services. For the services rendered, and from the fact that they will largely be covered by medical insurance, we think they are likely to be in small enough amounts as not to distort the picture. They can of course be identified. We decline to remand this case for a hearing on these three debts, and thereby extend its life, which is much too long already.

*Attorney fees*

Finally, Michael contends Dawn should not have been awarded trial attorney fees in the amount of $6,550, and her appeal attorney fees of $3,850. He objects both to the amounts of the fees and also to their being placed solely on him to pay.

■ As to the amounts of the fees, we have examined the evidence and we conclude that the trial court was within a very wide discretion accorded to him in the amount allowed as attorney's fees. *Mastin v. Mastin*, 709 S.W.2d 545, 550 (Mo.App. 1986). As to assessing them in full against Michael, we find that Dawn in equity should pay one-third of her own attorney's fees.[1] The award of trial attorney fees is therefore reduced from $6,550 to $4,367 and the award of attorney fees on the appeal is reduced from $3,850 to $2,567.

We have examined other points raised by the appellant and find that they are without any merit.

1. After the performance of the decree, the parties will be in the following position with respect to marital property of which there is record evidence of value:

The decree in Case No. DR 83–04928 is therefore modified to reduce Dawn's maintenance in gross from the $36,750 (excluding attorney fees) awarded in the decree, to $31,750; the attorney's fees awarded to Dawn are reduced from $6,550 to $4,367. The decree in Case No. DR 83–04923 is modified to reduce the appeal attorney fees from $3,850 to $2,567. As so modified the decrees are affirmed.

All concur.

### Michael

Assets:

| | |
|---|---|
| Value of Dawn's ring | $ 10,000 |
| Income tax refund | 27,000 |
| Proceeds of sale of Mercedes | 7,500 |
| Total | 63,500 |

Liabilities:

| | |
|---|---|
| Maintenance in gross as modified | 31,750 |
| Debts incurred by Dawn after separation | 13,229 |
| Dawn's attorney's fees, as modified | 6,934 |
| Michael's attorney's fees (assumed same as Dawn's) | 10,400 |
| Total | 62,313 |
| Balance | 1,187 |

Assets:

| | |
|---|---|
| Maintenance in gross as modified | $ 31,750 |

Liabilities:

| | |
|---|---|
| One-third of attorney's fees | 3,466 |
| Debts ordered paid by Dawn | 4,825 |
| Total | 8,291 |
| Balance | 23,459 |

Not the least mystery in this record is the $27,000 income tax refund, for which there is no explanation, but it is not disputed by the parties.