Elaine STURGEON,
Petitioner/Respondent, Cross–Appellant,

v.

Charles STURGEON,
Respondent/Appellant, Cross–
Respondent.

Nos. 61602, 61643 and 61645.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 10, 1993.

Application to Transfer Denied
April 20, 1993.

Daniel P. Card, II, Alisse C. Camazine, St. Louis, for appellant.

Susman, Schermer, Rimmel & Shifrin, Frank Susman, Thomas R. Schlesinger, St. Louis, for respondent.

PUDLOWSKI, Judge.

Husband Charles Sturgeon appeals from a Decree of Dissolution of Marriage ordering maintenance and child support payments to Wife Elaine Sturgeon. Wife cross-appeals challenging the trial court's division of real estate. We affirm.

The parties were married on July 7, 1964. They had three children during their marriage. The youngest, Julie Ann, was born in 1977 and is still unemancipated at the time of this case.

In the early years of their marriage, wife worked in various factories and as a drug store clerk. In 1985, she worked part-time at a grocery store for $4.00 per hour. In 1987, wife worked as a maid at a motel earning minimum wage. She earned $4.30 per hour, in 1989, working part-time at a yogurt shop. Wife was most recently employed by a printing company where she earned $100 per week. Also, throughout the marriage, wife maintained and managed the couple's three rental houses. This entailed cleaning, painting, fixing broken items, landscaping and showing the properties. Wife had currently been applying for three jobs per week in order to meet the minimum requirements for unemployment benefits.

Husband is a mechanical engineer employed by Monsanto Company since 1969. His gross salary is $58,101.12 annually or $2,420.88 semi-monthly. Husband also spent a substantial amount of time maintaining and managing the rental properties.

Wife filed her Petition for Dissolution of Marriage on April 3, 1990. On July 2, 1990, the court entered a *pendente lite* (PDL) order, whereby husband was ordered to pay wife $750 per month temporary maintenance and $500 per month temporary child support. On March 29, 1991, the court held husband in contempt for failure to pay portions of the PDL maintenance and child support judgment. After two months, he was released on May 23, 1991 following his payment of $8,100 toward the arrearages.

At a hearing on the merits commenced on November 12, 1991, evidence concerning the marital assets and their values was admitted by stipulation. Wife testified about marital difficulties, including instances of physical and verbal abuse, that occasioned the parties separation. She stated that husband beat her several times during the course of the marriage. He also demeaned and treated her like a child.

Husband urged that many of the problems stemmed from wife's money mismanagement. Husband also testified that the rental properties produced little net income over and above the mortgage payments and that after deducting expenses and improvements, there was a negative cash flow. There was further testimony that these properties produced tax write-offs and deferred tax liabilities, especially the Clearwood house. Husband's attorney offered testimony about the nature and amount of expenses for maintaining the rental property. A discussion about whether and why the evidence was probative ensued. The trial court received some sources or exhibits of evidence relating to rental property expenses, but excluded evidence relating to proposed capital expenditures needed for the upkeep of the houses. Through an offer of proof, husband estimated the costs of needed improvements on the property.

Additional testimony was heard from husband's CPA expert via an offer of proof. The trial court had sustained an objection to him testifying about potential tax consequences regarding the properties. The CPA expert testified that if the Clearwood property had to be sold, husband would owe $17,904 in deferred taxes even though the property had a net equity of only $100.

The other most significant asset was husband's interest in the Monsanto 401(k) plan. Although the value of this asset was $39,262, husband had borrowed approximately $34,000 from the plan. The court did not consider this an act of marital misconduct, but required him to assume sole responsi-

bility for repayment. Because these payments must be made through payroll deductions and because payroll taxes are also deducted, husband testified that he did not have the cash flow to meet his maintenance and support obligations.

The trial court issued its Findings of Fact, Conclusions of Law and Decree of Dissolution on December 16, 1991. By this decree, the trial court awarded wife approximately 51% or $96,200 and husband 49% or $90,200 of the marital property. Wife received the parties former residence on Foxpoint and another rental house on Wayles. Husband received the parties current residence on Cherrycove and another rental house on Clearwood. Each party separately assumed the encumbrances that already existed on the particular pieces of property they received.

Husband was ordered to pay 90% or $35,726.35 of the marital debt, which included wife's attorney's fees of $8,916. The trial court also found that husband was indebted to wife under the PDL order. Under the Consent Order of Amendment, the sum of the PDL indebtedness order, $4,463, and wife's attorney's fees would be loaned by wife to husband to prevent foreclosure of the properties awarded wife. Husband is to repay wife the $13,379 with 8–½% interest.

The court ordered husband to pay wife maintenance of $600 per month and child support of $583 per month. In setting these amounts the court did not make adjustments for the rental properties awarded either party. In addition, each party was awarded one-half of husband's future Monsanto pension benefits through a Qualified Domestic Relations Order. Finally, the trial court awarded both parties joint physical and legal custody of their minor daughter, relying on the fact that the two primary residences were situated within eight houses of each other.

After a motion by wife, the Decree was amended on February 21, 1991, pursuant to a Consent Order. This Amendment adjusted arrearage amounts from the PDL order, provided for the loan from wife to husband, and arranged the transition between houses. Husband appealed on March 2, 1992, and wife subsequently filed a cross-appeal.

### Maintenance and Child Support Amounts

Husband's first and fourth points on appeal contest the amounts of maintenance and child support awarded wife. In his first point, husband argues that the trial court should have considered evidence on the cost and expenses involved in owning and operating the rental residential real estate that always resulted in a negative cash flow.

Husband cites several pages of the transcript which include a confusing colloquy regarding the rental property. The court questioned the probative value of testimony on certain rental expenses. Husband primarily relies on the court's statement, "You're—Just hang on. You could take—You know, I will—I am required by law to take into account the tax value. But I'm not going to take into account maintaining of these properties when there is a completely separate, you know, income for this family." Although this is the strongest statement husband can point to, it is characteristic of the muddled discourse that occurred on the issue of rental expenses/income. Nonetheless, husband asserts that this was an erroneous declaration and application of the law and is contrary to the provisions governing the use of Form 14.

■ The trial court is vested with broad discretion in awarding maintenance. *In re Marriage of Zavadil*, 806 S.W.2d 506, 512 (Mo.App.1991). Awards of maintenance are reviewed only for an abuse of discretion. *Id.* Unless the amount of maintenance is patently unwarranted or is wholly beyond the means of the paying spouse, interference by this court is not warranted. *Id.*

■ We decline to interfere because the award to wife was not patently unwarranted or wholly beyond husband's means. The monthly maintenance and support obligation of $1,183 is only 24% of husband's monthly gross salary income of $4,841. Many cases have been affirmed with great-

er awards. *See In re Marriage of Ross* 772 S.W.2d 890 (Mo.App.1989); and *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262 (Mo.App.1988). Furthermore, even taking husband's conservative monthly net income figure of $2,613, a 45% award of this figure to wife was not unjustifiable.

■ The trial court did not erroneously apply or declare the law in arriving at these figures. It is true that a trial court should consider all sources of income[1] in determining maintenance. *See Kacich v. Kacich*, 785 S.W.2d 606, 608 (Mo.App.1990). The cited portions of the transcript, however, do not rebut the presumption that the trial court considered all the evidence before it. Husband made an offer of proof on the issue of rental income/expense. Afterward, the court sustained an objection to this evidence. Although the evidence was not specifically accepted, the trial court had an opportunity to appraise its relevance and probative value. In paragraph 12 of the decree, the trial court specifically mentioned the continuing maintenance and income of the rental properties. Viewing all of the evidence and permissible inferences therefrom in the light most favorable to the trial court's decree, *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991), we are persuaded that the trial at least *considered* the effect when establishing maintenance and child support.

■ Moreover, notwithstanding husband's contention that rental property upkeep is an expense to consider in reducing maintenance, the record does not clearly establish the character of these payments. Those contained in the exhibits that were before the court could be argued to contain some necessary monthly expenses, but also contained other arguable capital expenditure payments that husband admits he is "free to defer and manipulate to some extent." We defer to the trial court's greater vantage point in determining the relevance of this evidence. *See Bonskowski v. Bonskowski*, 700 S.W.2d 99, 100 (Mo.App.1985).

■ Finally, as alluded to by the trial court, there is no ongoing rental business or income/loss that can be relied on in determining maintenance and support because the rental properties were divided. We cannot assume that Husband's historical figures represent what will happen with these properties going forward. The parties are free to sell their respective rental properties at any time. The trial court properly considered all ongoing sources of income to husband in completing Form 14. Furthermore, the trial court did not abuse its discretion in excluding alleged sources of income or loss on relevance or probative value grounds.

■ Husband's fourth point reiterates the arguments of the first point and emphasizes that the award of $600 maintenance to wife is excessive and substantially beyond husband's ability to pay given his other obligations. Unless amended, husband claims he will be unable to repay his Monsanto 401(k) plan and will have to sell marital assets; both events which have significant adverse tax consequences.

Section 452.335, RSMo 1986, requires the trial court to consider husband's ability to pay. The trial court stated in its decree that it considered all the factors of § 452.-335. The trial court made no erroneous finding and judgment clearly contrary to the facts before it that resulted in an abuse of discretion. *See Beckman v. Beckman*, 545 S.W.2d 300 (Mo.App.1976).

■ Husband carefully points out all the monthly obligations he pays and the negative impact of tax. He fails to mention, however, the mutual funds and the unmortgaged $60,000 equity in the Cherrycove residence. While one's salary is usually the most important factor in one's ability to pay, the court may consider other resources for maintenance and child support; nothing is exempt from these primary calls upon a parent's resources. *Barber v. Barber*, 748 S.W.2d 679, 682 (Mo. App.1988). Husband could raise additional cash without selling assets by mortgaging

---

1. We question, without deciding, whether the same obligation extends to losses of a side busi- ness.

his equity in the Cherrycove residence. Nor does husband highlight tax deductions for depreciation of rental property or his borrowing from the 401(k) plan. After making the ordered maintenance and child support payments, husband has the ability to meet his other obligations and needs from the remainder of his salary income.

## Wife's Income Amount

Husband argues, in his second point, that the trial court erred when computing wife's income for child support and maintenance as only being $688 per month. Husband contends the trial court failed to attribute to wife any interest or other investment income from the marital property awarded to her despite the provisions in the Consent Order of Amendment that husband is to pay wife 8–½% interest on the $13,379 she loaned to him. Husband further asserts that wife could earn substantially more than the minimal income attributed to her, given her admitted job skills. Thus, the trial court's calculations under Form 14 were erroneous.

■ Husband cites *Kinder v. Kinder,* 777 S.W.2d 339 (Mo.App.1989), and Form 14 for the proposition that a court must consider all sources of income in making support determinations, including interest or investment return on marital property awarded a spouse. Although this is true, husband's argument that the court should have included the interest earned on the loan to husband lacks merit. This loan was created in the Consent Order of Amendment filed six weeks after the court entered its decree. Because this asset was not in existence when the trial court calculated maintenance and support amounts, it could not have been considered. In addition, husband did not ask the trial court to change the decree based on the new circumstances set forth in the Amendment.

■ Husband's claim that the trial court compounded the error by imputing to wife an earning capacity of only minimum wage is also unconvincing. Wife only has a tenth grade education. She has held several low paying jobs, but never for more than a year at a time. The highest rate of pay she ever earned was $4.30 per hour, and the greatest salary was $100 per week. There was no other definitive investment or interest income before the court. Wife never earned wages for her rental property management or maintenance work. Further, the trial court was free to disbelieve the evidence that her work would yield greater income in an arms-length employment situation. Disregarding evidence and inferences contrary to the trial court's decree, *Mehra,* 819 S.W.2d at 353, the trial court's imputation of minimum wage earning capacity or $688 per month income to wife was supported by the record and not erroneous.

## Tax Ramifications

■ Appellant argues, in his third point, that the trial court erroneously declared and applied the law in finding irrelevant and refusing to hear evidence from husband's CPA expert concerning tax consequences of selling the Clearwood property. Appellant claims that the court further abused its discretion because the testimony was directly material and relevant to the issue of husband's ability to pay maintenance and child support.

A court must consider tax ramifications flowing from its decree. *In re Marriage of Lewis,* 808 S.W.2d 919 (Mo.App.1991). The trial court clearly stated that it was "required by law to take into account the tax value" and that it would consider the tax ramifications. There is no basis for husband's claim.

Because the trial court is deemed to know the tax law, it did not err in declining to hear the testimony of husband's CPA expert. Furthermore, it did not consider the tax ramifications in a vacuum. Insofar as the tax consequences impacted the property division,[2] sufficient facts were before the court and the court had the ability to calculate potential tax liabilities. We take the trial court's word, that tax conse-

---

**2.** Awarding property to husband that was encumbered by a deferred tax liability was well within the trial court's discretion given the evidence of marital misconduct.

quences were considered, at face value. The exclusion of this testimony did not impair the trial court's ability to properly determine maintenance and child support.

### Award of Residences

■ In her only point on the cross-appeal, wife argues that the trial court abused its discretion in awarding the Cherrycove residence to husband. Wife asserts that there was no rational basis for awarding the Cherrycove residence to husband because she and their daughter were living in this home and husband could have moved to the Foxpoint residence.

Contrary to wife's implication, the trial court did take into account the desirability of awarding the family home to the parent who has custody of the minor children. *In re Marriage of Stuart,* 805 S.W.2d 309, 312 (Mo.App.1991). There was a rational basis stated in the court's decree for not awarding the Cherrycove residence to wife:

> It is desirable to avoid the necessity of sale of the Cherrycove residence and the nearby Foxpoint rental house, due to joint custody arrangements. Also, the Cherrycove residence, if awarded to Wife, may provide no financial relief by borrowing against its equity, because Wife's income and credit history may not support servicing the additional debt. On the other hand, the Wayles rental property could be sold by Wife to gain cash for her, without hampering the joint custody arrangements.

The trial court did not abuse its discretion in awarding the Cherrycove residence to husband. Interference by this court would only further disrupt the lives of the parties and add unnecessary moving expenses.

The judgment of the trial court is affirmed.

CRANDALL, P.J., and GRIMM, J., concur.