Christopher H. JUNG, Appellant,

v.

Beverly A. JUNG, Respondent.

No. 65129.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 15, 1994.

Diane Campbell Howard, Cape Girardeau, for appellant.

Richard G. Steele, Cape Girardeau, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Christopher H. Jung ("husband"), appeals from the Cape Girardeau County Circuit Court's order dissolving husband's marriage to respondent, Beverly A. Jung ("wife"). We remand for redetermination of the maintenance award, and otherwise affirm.

Husband and wife married August 10, 1964, and had three children. Wife, who never graduated from high school, supported the couple through a series of jobs while husband attended medical school. At the time of dissolution, husband, a physician, was employed by his wholly-owned professional corporation, SEMO ENT Consultants, Inc. During the three years prior to dissolution of the marriage, husband earned the following compensation: $256,624.96 in 1990; $158,-642.94 in 1991; and $209,971.18 in 1992. Furthermore, the corporation paid husband $3,366 per month for office rent and $3,150 per month for equipment rent, and provided his medical and dental insurance. Husband also received a $1,000 fee every month for his service on a board of directors.

From the time husband opened his private practice in 1974 until several months after the parties' separation in 1992, wife worked as the office manager for husband's corporation. Wife received the following compensation during the three years prior to dissolution: $23,124.85 in 1990 and 1991; and $19,-000 in 1992 (for nine months).

Husband and wife jointly owned a real estate rental business in which both parties were actively involved. The parties utilized the real estate rental business to generate losses and reduce their tax liability.

The parties separated on or about July 17, 1992. On August 24, 1992, husband petitioned for dissolution. The case was tried before the Cape Girardeau County Circuit Court September 2 and 3, 1993. On October 21, 1993, the trial court issued findings of fact, conclusions of law, and an order, judgment and decree of dissolution of marriage.[1]

---

1. The order was amended as to a minor clerical error through an order nunc pro tunc on November 3, 1993.

The trial court found the marriage to be irretrievably broken, and characterized the breakdown of the parties' marriage as "almost entirely attributable to [husband's] current relationship with another woman." The court found husband to have "flaunted" his affair before wife, their children, and the community at large. Husband—using marital assets and income—took his mistress and her children on several expensive trips, bought her and her children clothes, "loaned" her furniture, let her use his car and credit cards, and purchased jewelry for her, including two different engagement rings.

The trial court determined that husband's conduct made it "intolerable" for wife to continue working in husband's corporation. The court further found wife unable to earn sufficient income with which to maintain the lifestyle to which she had become accustomed during her marriage, assuming she could find similar employment. The court caustically noted that while wife's lifestyle was "shattered," husband's lifestyle was unchanged: "[h]e is doing everything he did before only now with a different, younger woman."

The trial court found husband's personal living expenses to be $7,139 per month, and that of wife to be $4,400 per month. The court ruled that wife was capable of finding at least minimum wage employment due to her several years of experience as an office manager, despite her age (54) and lack of education. The court found wife able to contribute $800 per month to her own maintenance. The court also noted that wife would receive considerable interest income from non-retirement accounts distributed to her.

The couple had three children, but only their youngest ("son")—a college student—was still unemancipated at the time of dissolution. The trial court awarded wife primary custody of son, with husband agreeing to pay child support of $1,700 per month to cover son's reasonable living expenses.

During the pendency of the dissolution, the parties' marital home and three rental properties owned by their real estate company had been sold, while contracts for the sale of two other properties were executed. The trial court noted the proceeds from the sales were evenly distributed between the parties and were not to be considered in dividing the remaining marital assets. Wife's share of the proceeds from the sale of marital properties amounted to approximately $97,000.

The trial court awarded wife the following marital real estate: a time share in Arkansas; one half interest in a North Padre Island condominium; and a condominium in Columbia, Missouri. Wife also received a total of $16,379 deposited in four bank accounts, and various securities, stocks, bonds, and related instruments with a cumulative value of $98,826.

Pursuant to a Qualified Domestic Relations Order, the trial court awarded wife a share of husband's pension and profit sharing plans. Said share was valued at $570,695, and was to commence paying out to wife five and one half years from the date of the order.

The trial court further awarded wife a cash settlement of $300,000, payable by husband either in a lump sum, or in monthly payments of $3,639.83 for ten years (factoring in an annual interest rate of 8%). The court also determined wife was entitled to periodic maintenance payments of $3,600 per month. This figure represented the shortfall between wife's estimated earning capacity of $800 per month and wife's reasonable expenses of $4,400 per month. Finally, the court noted wife would receive "considerable" interest income from the accounts distributed to her.

Husband appeals the order. For his first point, husband contends the trial court erred by awarding wife any maintenance payments, as wife had been awarded sufficient property to meet her reasonable needs and therefore did not qualify for maintenance. For his second point on appeal, husband argues that if a need for maintenance does exist, the court erred in awarding wife maintenance of $3,600 per month as that figure exceeds the amount necessary for wife to meet her reasonable needs. We address these two points together.

■ An appellate court will sustain a decree or judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law

or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Awards of maintenance are matters resting within the broad discretion of the trial court; we review such awards only for an abuse of that discretion. *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 953 (Mo.App. E.D.1993).

■■■ A spouse seeking maintenance must meet two statutory threshold requirements: the spouse must (1) lack sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs; and (2) be unable to support himself or herself through appropriate employment. RSMo § 452.335.1.[2] If the spouse is entitled to maintenance, said maintenance shall be in such amounts and for such periods of time as the court deems just after considering all relevant factors, including the ability of the party seeking maintenance to meet his or her needs independently and the ability of the paying spouse to meet his or her own needs while paying maintenance. RSMo § 452.335.2(1), (8); *Kinder v. Kinder*, 777 S.W.2d 339, 341 (Mo.App.W.D. 1989). The recipient spouse is not required to deplete his or her share of the marital property awarded in the dissolution proceedings before being entitled to maintenance. *Barth v. Barth*, 800 S.W.2d 127, 129 (Mo. App.E.D.1990).

■■■ Missouri courts hold that the interest the spouse will earn from his or her share of the marital property must be considered in determining the necessity for, or amount of, maintenance. Failure to consider the recipient spouse's reasonable expectation of income from investment of the marital property constitutes error. *Kinder*, 777 S.W.2d at 342. Maintenance must be limited to the demonstrable needs of the recipient spouse and not provide accumulation of capital. *Heins v. Heins*, 783 S.W.2d 481, 483 (Mo. App.W.D.1990). *See also In re Marriage of Johnson*, 856 S.W.2d 921, 927 (Mo.App.S.D. 1993) ("A trial court commits error in failing to consider investment income in determining whether or not a spouse is deserving of

maintenance."); *In re Marriage of Tappan*, 856 S.W.2d 362, 367 (Mo.App.S.D.1993).

■■■ This Court adheres strenuously to the above rules. In *Drikow v. Drikow*, 803 S.W.2d 122 (Mo.App.E.D.1990), we reversed an award of maintenance on the grounds that the trial court neglected to factor in the interest the recipient spouse would earn from investing the cash payments awarded to her. We stated that "it would be ignoring reality for us to say that the interest earned off of the cash cannot be considered in determining whether or not wife was deserving of maintenance." *Drikow*, 803 S.W.2d at 128.

In the immediate case, wife received $16,379 in bank account deposits and $98,826 in securities and related instruments. Wife was also awarded a cash settlement of $300,000, payable either in a lump sum or in increments of $3,639.83 per month for ten years. Furthermore, wife will begin receiving payments from her share of husband's pension and profit sharing plans five and one half years from the date of the trial court's order.

The trial court deemed wife capable of earning $800 per month on her own. By deducting that amount from the $4,400 per month it found to be wife's reasonable needs, the court determined that wife required monthly maintenance payments of $3,600. However, this calculation failed to address the court's own finding that wife would earn "considerable" interest income from her share of the marital property.

We find the trial court erred in failing to consider wife's interest income in calculating the amount of maintenance awarded to wife. We remand for a determination by the court as to how much interest income wife will earn per month from the marital property awarded to her upon dissolution, and direct the court to recalculate the maintenance award, taking wife's interest income into account and reducing the award to an amount not more than that necessary to meet wife's demonstrable needs. Furthermore, when wife begins receiving her share of husband's pension and profit sharing plans, the court may, upon a motion to modify, determine the

**2.** References to statutes are to RSMo Cum.1994, except where otherwise indicated.

interest income wife earns from that particular marital property and revise the maintenance award accordingly.

For his third point on appeal, husband alleges the award of maintenance payments of $3,600 per month exceeds his ability to meet his reasonable needs and pay child support. We disagree. First, due to our above ruling, this point is premature. Husband's maintenance payments may be reduced once the trial court factors in the interest wife will earn from the amounts distributed to her. Second, husband fails to meet his burden of showing that the maintenance payments were patently unwarranted or wholly beyond his means so as to amount to an abuse of discretion. *Sturgeon v. Sturgeon*, 849 S.W.2d 171, 174 (Mo.App.E.D. 1993). As a physician and sole owner of a professional corporation, husband has significantly greater earning potential than wife, and is in his prime earning years. Husband made over $200,000 in 1992 and received substantial rental payments and director's fees. He also retained the majority of the marital real estate properties. All resources available to a party, not just salary, should be considered in determining the party's ability to pay maintenance and child support; nothing is exempt from consideration. *Sturgeon*, 849 S.W.2d at 175. Furthermore, the trial court noted that husband's lavish and profligate spending on himself and his girlfriend continued unabated up through the date of dissolution; this fact renders husband's claim of poverty somewhat less than credible. The court found that, on these facts, husband possessed the ability to make maintenance payments and meet his other obligations and needs. We agree. Point denied.

For his fourth point on appeal, husband contends the trial court erred in not prospectively limiting the duration of maintenance payments, as there was a reasonable expectation of an impending change in the parties' financial condition. Husband refers to wife's share of his pension and profit sharing plans, due to begin payment five and one half years from the date of the order. According to husband, maintenance should terminate upon that date.

"Awards of limited duration should not be based on speculation as to future conditions of the parties." *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262, 265 (Mo.App.E.D.1988). Rather than seek a prospective limit on the duration of a maintenance award, the paying spouse should institute a proceeding to modify the award if and when the recipient spouse's circumstances change. *Id.*

Here, the trial court would have had to speculate as to the parties' future income, expenses, and health if it decided to limit the duration of the maintenance award to five and one half years. Furthermore, the court's order was modifiable. We find the court acted well within its discretion in not limiting the duration of the maintenance award. Husband's proper recourse is to move for modification of the order when wife's share of the pension and profit sharing plans becomes available to her. *See Siegenthaler*, 761 S.W.2d at 265. Point denied.

For his final point on appeal, husband alleges the trial court erred in failing to reduce the value of certain real estate awarded to husband to reflect the tax consequences from the pending sale of that property. The real estate in question was a shopping strip valued at $295,000 (the contract sales price) and subject to a mortgage of $139,873. Husband contends he will be liable for $53,488 in state and federal taxes when the property is sold.

A trial court should take into consideration the tax consequences to the parties when dividing marital property. *Schneider v. Schneider*, 824 S.W.2d 942, 949 (Mo.App.E.D.1992). Here, the court did address the tax ramifications of the sale of real estate assets distributed to husband, but refused to reduce the value of those assets by the amount of the potential tax liability. The court, citing *Schneider*, reasoned that husband had other means of disposing of the property which did not incur tax liability. In fact, the record shows husband frequently engaged in like-kind exchanges when selling real estate properties, thereby deferring or avoiding capital gains taxes. We defer to the discretion of the trial court regarding the

valuation of husband's marital property. Point denied.

The case is remanded for a redetermination of the amount of maintenance husband must pay, taking into account the interest income wife earns from the marital property distributed to her. We affirm in all other respects.

REINHARD, P.J., and CRAHAN, J., concur.