In re the MARRIAGE OF Steven M. CHORUM and Valynn A. Chorum.

Steven M.CHORUM, Petitioner–Respondent,

v.

Valynn A. CHORUM, Respondent–Appellant.

No. 21370.

Missouri Court of Appeals, Southern District, Division One.

Dec. 31, 1997.

Robert R. Parrish, Joplin, for Respondent–Appellant.

Albert D. Johnston, Carthage, for Petitioner–Respondent.

GARRISON, Presiding Judge.

Valynn Chorum ("Wife") appeals from a decree dissolving her marriage to Steven Chorum ("Husband"). She raises issues about the trial court's award of joint custody of the parties' child, its computation of child support, the distribution of marital property, rejection of her request for maintenance, and the amount Husband was ordered to pay on her attorney's fees. We affirm in part and reverse in part.

Husband and Wife were married on July 25, 1985, and their only child ("L.C.") was born March 6, 1986. Through much of the marriage, Wife was a homemaker, although she worked part-time for Fanning Home Medical Services at the time of trial. Husband is self-employed as a farmer. The parties separated on April 1, 1996. Shortly thereafter, Husband began a relationship with another woman, Sherry Hughes.

The trial court dissolved the marriage on November 6, 1996. It awarded the parties joint custody of L.C., and directed that Wife have primary physical custody of her. Husband was awarded physical custody of L.C. at designated times, and was ordered to pay child support of $426 per month. The trial court then divided the marital property, denied Wife maintenance, and awarded her attorney $2000 in fees.

This court will affirm a dissolution of marriage decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court has a unique opportunity to assess the credibility of witnesses, and it is free to

believe or disbelieve all, part, or none of the testimony of any witness. *T.B.G.*, 772 S.W.2d at 654.

 In her first point on appeal, Wife contends that the trial court erred in awarding joint custody of L.C. to the parties when both of them requested that sole custody of the child be awarded to Wife. In reviewing a child custody award, we are mindful that it should not be disturbed unless the ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable and we are firmly convinced that the welfare of the child requires some other disposition. *Hankins v. Hankins*, 920 S.W.2d 182, 187 (Mo.App. W.D. 1996). Accordingly, a child custody determination by the trial court is given greater deference than other types of cases. *Id.*

 When making a custody determination, the trial court must consider "all relevant factors," including the "wishes of the child's parents as to his custody." § 452.375.2.[1] In the instant case, both Husband and Wife expressed the desire that Wife have sole custody of L.C., and that Father be entitled to visitation. However, Husband's and Wife's wishes as to L.C.'s custody, though relevant, were not binding on the trial court, because it was required to determine L.C.'s best interests by considering *all* relevant factors. *Distler v. Distler*, 877 S.W.2d 184, 185 (Mo.App. W.D.1994). Agreements between parents that concern minor children are merely advisory. *Jones v. Jones*, 903 S.W.2d 277, 281 (Mo.App. W.D. 1995). The child's best interests are primary, and the best interests of the parents are secondary. *Wenger v. Wenger*, 876 S.W.2d 735, 743 (Mo.App. E.D.1994).

 The Missouri legislature has declared that it is the public policy of this state to assure children frequent and meaningful contact with both parents, and that it is in the public interest to encourage parents to share decision-making rights and responsibilities of child rearing. § 452.375.3; *Hankins*, 920 S.W.2d at 186. Accordingly, prior to awarding custody, the trial court is required to consider joint custody to both parents. § 452.375.4(1). In doing so, the court is to determine whether, under all of the relevant circumstances, joint custody is in the best interests of the child. *In Re Marriage of Barnes*, 855 S.W.2d 451, 455 (Mo.App. S.D. 1993). If this is so, then the trial court grants joint custody; if not, it then considers awarding sole custody of the child to one parent or to a third party. *Id.*

 Before a joint custody arrangement can be said to be in the best interests of the child, there should be some evidence in the record to support a finding that the parents are emotionally equipped to deal with each other as equal partners in the care of their child. *Brisco v. Brisco*, 713 S.W.2d 586, 590 (Mo.App. W.D.1986). The preference for joint custody stated in § 452.375.3 is in favor of parents who show the willingness and ability to share the rights and responsibilities of child-rearing even after they have dissolved their marriage. *Barnes*, 855 S.W.2d at 455.

In the instant case, the record contains considerable evidence that Husband and Wife are willing and able to share the responsibilities of L.C.'s upbringing. Prior to the trial, Husband and Wife discussed prospective custody arrangements, and devised a plan similar in substance to the one imposed by the trial court. The primary difference between the two schemes is in name: the Chorums designated their plan as sole custody with visitation, while the trial court characterized its scheme as a joint custody arrangement. While Wife did express concerns about leaving L.C. with Husband for an extended period during a busy time of the year on the farm, and about her being exposed to Husband's paramour, Ms. Hughes, we cannot say that Husband and Wife are not willing and able to work together to raise L.C., nor can we hold that the trial court's joint custody plan was arbitrary, unreasonable, or clearly against the logic of the circumstances. *Id.*; *Hankins*, 920 S.W.2d at 187. Point I is denied.

---

1. All statutory references are to RSMo 1994. All rule references are to Missouri Rules of Civil Procedure (1997).

■ In her second point, Wife contends that the trial court erred in calculating Husband's child support obligation. She argues that it failed to adjust his income upward because of depreciation on farm equipment taken on his income tax returns, and because his father provides him with a home and utilities rent free. As a result, she argues, the trial court's award of $426 per month is too low.

Husband filed a Form 14 which indicated that his presumed child support obligation would be $426.02 per month, and Wife calculated a presumed amount of $617.58. The trial court, however, did not agree that Husband's income, for Form 14 purposes, should include the items which Wife complains about in this point. Although the Court ordered Husband to pay child support in an amount only two cents less than that calculated on his Form 14, it apparently did not do so because that amount was presumed correct under Rule 88.01(e). Instead, the trial court found that "[a]fter considering all of the factors in 452.340, the Court finds that the application of the guidelines on child support would be unjust or inappropriate in this case."

■ Rule 88.01(e) provides that there is a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is the amount of child support to be awarded. If the parties do not agree on the amounts to be used to complete Form 14, then they should each submit a completed Form 14 containing the amounts they contend are correct. *Tuning v. Tuning*, 841 S.W.2d 264, 267 (Mo.App. S.D.1992). The trial court must then determine the correct amounts to use and calculate the presumed child support under Form 14. *Id.* If it finds the presumed amount to be unjust or inappropriate, it must make a written finding or a finding on the record to that effect. *Id.*

In the instant case, there was a disagreement about the correct amounts to be used in calculating child support under Rule 88.01(e), and each of the parties filed a Form 14. The trial court, however, without finding the presumed correct child support pursuant to Rule 88.01(e), declared that the presumed amount was unjust or inappropriate.

■ If the trial court agrees with and accepts a Form 14 amount calculated by a party to the proceedings, it need only so find. *Woolridge v. Woolridge*, 915 S.W.2d 372, 380–81 (Mo.App. W.D.1996). If it rejects [2] either party's proffered Form 14, it must complete its own Form 14 to find the presumptively correct child support. *Id.* at 381. Only after it finds the presumptively correct child support amount according to Form 14 can the trial court then determine whether to rebut this amount as unjust or inappropriate after consideration of all relevant factors pursuant to § 452.340.8. *Id.* at 379. The *Woolridge* court observed that the trial court's failure to find the presumptively correct child support amount often forces the appellate court to engage in a "scavenger hunt" to determine if the trial court's ultimate award was correct. *Id.* at 383.

In *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997), the Missouri Supreme Court cited, with approval, the reasoning in *Woolridge*, and held that the failure of the trial court to determine and find for the record the presumed correct child support pursuant to Rule 88.01, using Form 14, required a reversal and remand. The Supreme Court said:

On remand the trial court should follow the detailed prescriptions contained within *Woolridge* first to determine and find for the record the presumed correct child support amount and, then, to make a proper record with respect to why the presumed correct child support amount should be rebutted, if the trial court so determines.

*Neal*, 941 S.W.2d at 504. Based on these authorities and the record in the instant case, we reverse the judgment for child support

---

**2.** *Woolridge* explains the difference between the "rejection" and "rebuttal" of a party's Form 14. "Rejection" of a Form 14 calculation occurs when 1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or 3) the calculation is mathematically incorrect. "Rebuttal" occurs when the trial court finds that the Form 14 amount is unjust or inappropriate after consideration of all relevant factors. 915 S.W.2d at 378–79.

and remand the case to the trial court for further proceedings consistent with *Neal* and *Woolridge.*

■ On remand, the issues Wife raises in this point are likely to reappear. For that reason, we offer the following as an aid to the parties and the trial court. Wife argues that the trial court should have imputed income to Husband for child support purposes based on depreciation deductions that Husband claimed on his 1995 income tax return. She relies on *Francis v. Glenn,* 903 S.W.2d 222 (Mo.App. S.D.1995), and *Crowley v. Crowley,* 878 S.W.2d 70 (Mo.App. W.D.1994). In both cases, the trial courts imputed income based on depreciation deductions taken, and the judgments were affirmed. *Francis,* 903 S.W.2d at 224–25; *Crowley,* 878 S.W.2d at 72–73. Husband argues that these cases stand for the proposition that the trial court may, rather than must, add depreciation back to income for child support purposes. We agree. The "Directions for Completion of Form 14" provide that "gross income" from "self-employment" is "gross receipts minus ordinary and necessary expenses required to produce income." The trial court "may exclude ... amounts for depreciation" from ordinary and necessary expenses. Further, gross income for child support purposes "may differ from a determination of business income for tax purposes." In the instant case, the trial court expressly declined to impute income to Husband based on his depreciation deductions. Neither the "Directions for Completion of Form 14," *Francis,* nor *Crowley* require that depreciation be considered as additional income in calculating child support.

■ Wife also argues that the trial court should have imputed income to Husband for child support purposes because he lives in a house provided rent-free and with utilities paid by his father. The trial court found that "farm income is speculative at best, and ... [that it] did not believe it would be fair to impute income to [Husband] based on his present home being provided by his father at no cost. This savings to [Husband] is not reflected in his gross income in [Husband's Form 14], and it is not income of the sort from which he should pay further child support."

■ This court has defined "income" as "a gain or recurrent benefit usually measured in money that derives from capital or labor" or "the amount of such gain received in a period of time." *Coble v. Coble,* 931 S.W.2d 206, 209 (Mo.App. W.D.1996). The trial court should consider not only a parent's earnings for services rendered, but rather all resources available to him in determining his ability to pay child support. *Browning v. Browning,* 947 S.W.2d 106, 110 (Mo.App. W.D.1997); *Jung v. Jung,* 886 S.W.2d 737, 741 (Mo.App. E.D.1994); *Sturgeon v. Sturgeon,* 849 S.W.2d 171, 175 (Mo.App. E.D. 1993); *Barber v. Barber,* 748 S.W.2d 679, 682 (Mo.App. W.D.1988). Nothing is exempt from these primary calls on a parent's resources. *Sturgeon,* 849 S.W.2d at 175; *Barber,* 748 S.W.2d at 682.

According to testimony from Husband and his father, the two men farmed together, and Husband's father provided him with the house "as a part of [their] operation." One of Husband's duties as occupant of the house was to safeguard the farm machinery stored at the site. In his testimony, Husband resisted characterizing his use of the house as income, but did say that he "work[s] to trade it out." Put another way, Husband derives a benefit from the labor he expends in looking after the farm equipment stored at his house, and in jointly farming with his father. *Coble,* 931 S.W.2d at 209. It could be considered as a financial benefit which could have a positive impact on Husband's ability to pay child support. *See Farr v. Cloninger,* 937 S.W.2d 760, 764 (Mo.App. S.D.1997).

■ In her third point, Wife contends that the trial court abused its discretion when it divided the marital property because it "ignor[ed] [Husband's] marital misconduct and plac[ed] blame on [Wife] for the failed marriage." The division of marital property is a matter within the sound discretion of the trial court. *In re Marriage of Torix,* 863 S.W.2d 935, 938 (Mo.App. S.D.1993). This court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Rich v. Rich,* 871 S.W.2d 618, 626 (Mo.App.

E.D.1994). When dividing the marital property, the trial court must consider "all relevant factors," including the "conduct of the parties during the marriage." § 452.330. Sexual infidelity may be considered "conduct during the marriage," even if it occurred after the couple separated. *Divine v. Divine*, 752 S.W.2d 76, 78 (Mo.App. S.D.1988). However, misconduct is not a viable factor unless it places an extra burden on the non-offending spouse. *Id.; Rich*, 871 S.W.2d at 626.

The marital misconduct to which Wife refers is Husband's relationship with Ms. Hughes. She contends that Husband began this relationship about two months before Husband and Wife separated. Husband and Ms. Hughes both testified that they were just friends before the separation, and that their romantic relationship commenced shortly thereafter. The trial court found that "[Husband's] affair with Sherry Hughes did not cause the breakup of the marriage. The [trial] court further finds that [Husband's] interest in Sherry Hughes was a result of [Wife's] lack of interest in and involvement in ... Husband's family farming operation."

Wife argues that the trial court erroneously blamed her for the demise of the marriage, referring to the following findings:

> The [trial] court finds that [Wife] was more absorbed in reading a paperback romance novel ... and in letting [Husband's] now deceased mother feed and care for the child [L.C.], than be involved in the farming operation and in her husband and in what should have been their intensive operation. The [trial] court finds that her conduct took the "Mom" out of what should have been a "Mom and Pop" operation without any meaningful contribution made. It was this lack of interest and lack of involvement that put a wedge between this couple, not Sherry Hughes.

Husband testified that Wife did not pay attention to what was going on in his life and on the farm, that she did not help him in the farming operation, and that she spent most of her time reading or watching television. Husband's father testified that L.C. and her grandmother were very close, and that L.C.

spent a lot of time with her, often having her evening meals with her grandparents. Wife testified that she did not know how to operate most farm equipment, and that she had asked Husband to show her how to drive a farm truck, but Husband told her that he did not have the time or the patience to do so.

The trial court was free to disbelieve Wife's testimony on this matter, or to believe that of Husband and Ms. Hughes. *T.B.G.*, 772 S.W.2d at 654. We will defer to the trial court's determination of credibility. *Silverstein v. Silverstein*, 943 S.W.2d 300, 303 (Mo. App. E.D.1997). Moreover, it appears to us that the trial court's views on these issues did not significantly affect the proportions of marital property it distributed. It allocated to Husband marital property and debts with a net value of $118,639.64; Wife received property with a net value of $119,144.69. Expressed in percentages, Husband received 49.89 percent, and Wife received 50.11 percent of the net value of the marital property. Proportionally, this distribution is weighted very slightly in Wife's favor, and we cannot say that the trial court abused its discretion in this regard. *Rich*, 871 S.W.2d at 626; *Torix*, 863 S.W.2d at 938. Point III is denied.

■■■ Wife, in her fourth point, complains that the trial court erred in denying her spousal maintenance. The trial court may grant maintenance if the spouse seeking it lacks sufficient property, including marital property apportioned to him, to meet his reasonable needs; and if he is unable to support himself through appropriate employment. § 452.335.1. The trial court has considerable discretion in determining whether maintenance is appropriate. *Kovacs v. Kovacs*, 869 S.W.2d 789, 793 (Mo.App. W.D. 1994).

In the instant case, the trial court denied Wife maintenance, finding that her share of the marital property was sufficient to provide for her reasonable needs, and that there was no medical, physical, or psychological reason why she could not work. Wife's share of the marital property consists primarily of a money judgment against Husband for $111,099.69. According to the terms of the dissolution decree, one-half of the judgment was

to be paid within forty-five days of the judgment, and the remaining balance was to be paid in three annual installments together with interest at the annual rate of 9 percent.

▆▆▆ Wife complains that this form of property does not generate any income, and that she will be forced to deplete her share of the marital property to meet her living expenses. She is correct in her assertion that a party need not consume his marital property before being entitled to maintenance. *Witt v. Witt*, 930 S.W.2d 500, 503 (Mo.App. W.D.1996); *L.A.L. v. L.L.*, 904 S.W.2d 50, 54 (Mo.App. E.D.1995). However, she ignores the fact that one-half of the judgment was to be paid to her shortly after the judgment and could earn interest, and that the balance of the judgment would also generate interest income to her. Interest income from the investment of marital property is to be considered in determining maintenance. *Jung*, 886 S.W.2d at 740. Furthermore, Wife has an affirmative duty to seek full-time employment for the purposes of support. *Nelson v. Nelson*, 937 S.W.2d 753, 755 (Mo.App. S.D. 1997). At the time of trial, she worked on a part-time basis.

Wife, however, submitted evidence that her living expenses were $2617.50 per month; her net monthly earnings from her part-time job were $407.22. The trial court made no findings as to whether Wife's estimate of her expenses was appropriate, or as to how much she could reasonably be expected to earn if she worked full time. Our calculations indicate that the interest income on her judgment against Husband would be $4,999.49 the first year, $3,332.99 the second, and $1,666.50 the third. There is no evidence in the record to show what level of investment income might be generated by the portion of the money judgment which was to be paid shortly after the judgment. The trial court's finding that Wife's marital property is sufficient to provide for her reasonable needs is not supported by substantial evidence. *T.B.G.*, 772 S.W.2d at 654. Nor is its implicit finding that Wife can support herself through a combination of reasonable employment and investment income supported by substantial evidence. *Id.* Compare *Johnson v. Johnson*, 819 S.W.2d 391, 393–94 (Mo.App. E.D.

1991). Accordingly, the portion of the judgment denying maintenance to Wife must be reversed and the case remanded for further proceedings on that issue.

▆▆▆ In her fifth and final point, Wife argues that the trial court erred in failing to award her the full amount of her attorney's fees incurred in the dissolution proceedings ($11,007.40). Instead, the trial court awarded her $2000 in attorney's fees. The trial court has broad discretion in awarding attorney's fees and its judgment on this issue should be affirmed unless it is so arbitrary or unreasonable that it indicates indifference and a lack of proper judicial consideration. *Ritter v. Ritter*, 920 S.W.2d 151, 156 (Mo. App. W.D.1996). An award of attorney's fees is a discretionary ruling, and is presumed to be correct. *Glenn v. Francis*, 864 S.W.2d 947, 954 (Mo.App. S.D.1993). The party challenging an award of attorney's fees must demonstrate that the award was clearly against the logic of the circumstances and so arbitrary or unreasonable as to shock one's sense of justice. *Ritter*, 920 S.W.2d at 156.

Wife contends that the court should have awarded her more attorney's fees because Husband is better able to pay them than she. In support, she cites *Ritter*, 920 S.W.2d at 157, and *Bakula v. Bakula*, 926 S.W.2d 65, 67 (Mo.App. E.D.1996), for the proposition that one spouse's greater ability to pay is sufficient to support an award of attorney fees to the other spouse. We do not dispute that general premise, but that does not translate into a rule that the spouse with a greater ability must always be ordered to pay all of the other spouse's attorney's fees. In fact, in both *Ritter* and *Bakula*, judgments for less than the full amount of attorney's fees were affirmed. We are unable to conclude that the trial court abused its discretion in not ordering Husband to pay all of Wife's attorney's fees. Accordingly, her fifth point is denied.

The judgment of the trial court is affirmed with respect to Points I, III, and V; and is reversed and remanded with respect to Points II and IV. On remand the trial court shall reconsider the issues of child support

and maintenance, and in doing so, may receive additional evidence.

PREWITT and CROW, JJ., concur.