**In the Matter of Henry W. STROH, deceased.**

**William LOVATA, Sr. and Patricia J. Lovata, Guardian of the person and Estate of Helen L. Lovata, An Incompetent, Appellants,**

v.

**Mark A. HELFERS, Respondent.**

No. 66275.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 2, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 1995.

David L. Campbell, St. Louis, for appellant.

Richard Grossman, Beach, Burcke, Helfers & Mittleman, P.C., Clayton, for respondent.

KAROHL, Judge.

The probate court denied William L. Lovata, Sr. and Patricia J. Lovata's objections to the final statement of account and the proposed schedule of final distribution of Henry W. Stroh's estate. William Lovata, Sr. is one of six legatees named in Henry W. Stroh's will. Patricia Lovata is not a legatee. She is the guardian of Helen L. Lovata, another legatee. The four other legatees did not object to the final statement of account or the proposed final distribution of the estate. William Lovata, Sr. and Helen L. Lovata appeal after the probate court rejected the objections. We affirm in part and reverse and remand in part.

On February 10, 1989, Henry W. Stroh died testate. His will named George Helfers as independent personal representative. George Helfers accepted the nomination. He hired his son, Mark Helfers, to serve as attorney for the estate.

In June 1989, the personal representative filed an inventory of the assets of the estate. The inventory lists the following real and personal property:

REAL PROPERTY

| | |
|---|---|
| Vacant residential lot in Wentzville, MO | $ 1,612 |
| Vacant residential lot in Wentzville, MO | 1,612 |
| Vacant residential lot in Wentzville, MO | 6,317 |
| Residence at 1805 Kenilworth, Brentwood, MO | 40,000 |
| TOTAL | $49,541 |

PERSONAL PROPERTY

| | |
|---|---|
| 136 common shares Pacific Gas & Electric | $ 2,431.00 |
| 38 common shares Detroit Edison | 679.25 |
| 194 common shares Potomac Electric Power | 3,928.50 |
| 18,221,602 shares Allied Dividend Fund | 48,105.03 |
| 284 common shares Wisconsin Energy | 7,242.00 |
| 100 shares First Boston Inc. Fund | 837.50 |
| 2 preferred shares Valhalla Cemetery | 30.00 |
| Cash in 3 safe deposit boxes, Landmark Bank | 50,035.00 |
| 3 U.S. Savings Bonds @ $983.20 each | 2,949.60 |
| United Postal Savings account | 552.00 |
| Promissory Note on 516 Euclid, Hannibal, MO | 16,600.00 |
| 1966 Dodge & 1973 Dodge | 1,000.00 |
| TOTAL | $134,389.88 |

The total value of all property was $183,930.88. No furniture, household goods or wearing apparel were listed. In addition, decedent had various jointly held bank accounts with William Lovata, Sr., Patricia Lovata and/or Helen Lovata that totalled $405,604.97.

On October 25, 1989, the Lovatas filed a petition to determine title to $50,000 cash found in decedent's safe deposit boxes. They contended decedent had made an inter vivos gift of the contents of the safe deposit boxes to them shortly before his death. On November 27, 1989, the personal representative filed a petition to determine title to the $405,604.97 in the jointly held accounts. On September 12, 1991, the trial court entered a partial summary judgment. It found that $228,625.39 of the jointly held accounts were statutory joint tenancies and that genuine issues of fact existed regarding the status of the remaining accounts. On March 23, 1992, the Lovatas and the personal representative settled their claims. Pursuant to the settlement, the personal representative agreed to drop all claims against the jointly held accounts and to pay the $50,000 to the Lovatas.

The Lovatas agreed to put the money in a trust for themselves but with a provision that the four other legatees would each receive $10,000 upon Helen Lovata's death subject to the availability of trust funds.

On April 23, 1992, Mark Helfers filed a petition for $39,186 in attorney's fees for services related to the litigation to determine title to the accounts and cash. On April 28, 1992, the court granted his request for fees. Also in April 1992, George Helfers resigned as personal representative. Decedent's will named Mark Helfers as successor personal representative. Mark Helfers accepted the nomination and continued to do legal work for the estate.

On June 7, 1993, Mark Helfers filed a final statement of account and a proposed schedule of final distribution. On June 22, 1993, the Lovatas filed objections to both of these. They objected to: 1) lack of notice of the filing of the final statement of account and the proposed final distribution; 2) failure to account; 3) waste; 4) excessive fees, and 5) distribution of automobiles, note, cemetery

lots and real estate in kind. On May 25, 1994, the court denied the objections. Because the successor personal representative agreed with the Lovatas on one incorrect voucher, the court surcharged him $112.10. The court taxed costs against the Lovatas.

The Lovatas present seven points on appeal. In their first point, they contend the trial court erred in denying their objections because the personal representative wasted assets of the estate by: 1) failing to locate two automobiles that are included in the proposed schedule of final distribution; 2) continuing telephone service at decedent's residence for 16 months after decedent's death, and 3) incurring bank service charges for failing to maintain a minimum balance on one of decedent's accounts.

■■■ The personal representative serves in a fiduciary capacity. *Estate of Veselich v. Northwestern National Casualty Co.*, 760 S.W.2d 564, 569 (Mo.App.1988). It is the duty of the personal representative to look after the interests of the estate and to act for and on behalf of all persons who have an interest in the estate. *Id.* The personal representative is liable for want of due care and skill with the measure of due care and skill being that which a prudent person would exercise in the direction and management of his own affairs. *Id.*

### 1) AUTOMOBILES

■■■ The personal representative listed a 1966 Dodge and a 1973 Dodge as assets of the estate. He valued them at $1,000 total. In the proposed schedule of final distribution, the successor personal representative proposed each legatee take a ⅙ interest in the automobiles. He listed them on the amended final statement of account, which he submitted to the court at the hearing on the objections on December 9, 1993. However, he testified he did not know where the automobiles were and that he presumed they were stolen. He testified he had last seen them in mid–1990. He also testified there is an insurance claim pending on the automobiles, but that the claim is not shown on the amended final statement of account. The personal representative has a duty to collect all assets due the estate. *Mathews v. Pratt,*

367 S.W.2d 632, 636 (Mo. banc 1963). Here, the personal representative did not exercise due care in collecting and retaining two assets of the estate. Nor is the estate in a condition to be closed while insurance claims are pending. On remand this issue must be resolved.

### 2) TELEPHONE SERVICE

■■ Decedent died on February 10, 1989. However, the personal representative continued telephone service at decedent's residence until June 1990, a period of sixteen months. The amended final statement of account reflects eleven vouchers totalling $131.26 for telephone service. He testified he continued the service because "there were times when I had to go to the house and make phone calls from there" and "there were times when agents were there to make phone calls."

Section 473.803 RSMo 1986 provides: The independent personal representative shall ... take all steps reasonably necessary for the management, protection, and preservation of, the estate in his possession. Here, continuing telephone service for 16 months after decedent's death is not a reasonably necessary step to protect or preserve the estate. The personal representative continued the service for his own personal convenience and for the convenience of other agents. He had no authority, statutory or otherwise, to do so. We distinguish the continuation of telephone service from the continuation of other services, such as gas, water, or grass cutting, that may be reasonably necessary to protect or preserve assets of the estate.

### 3) BANK SERVICE CHARGES

■■ The personal representative listed two Landmark Bank (now Magna Bank) accounts as personal property of the estate. Account # 0521009278 contained $45,035 and account # 0521009287 contained $5,000. This was the money that had been found in decedent's three safe deposit boxes. The personal representative did not include any bank service charges in the original final statement of account. An amended final statement of account reflects bank service

charges totalling $397 from May 1990 to October 1993. The personal representative testified he did not know if he could have avoided the service charges if he had carried a minimum daily balance of $1,000 in the account. In addition, the following exchange took place:

(Counsel for petitioners): And you had the—It didn't concern you that the bank charge—was charging service charges on a monthly basis that you could possibly have avoided that charge for the benefit of the heirs. That didn't concern you at all?

(Personal representative): It didn't come to my mind, sir—

(Counsel): All right.

(Personal representative): —not that I recall today.

The personal representative did not provide any other explanation for incurring the charges. He could have avoided the charges by consolidating bank accounts and maintaining a "no charge" balance. As such, his actions do not indicate he exercised the due care required of a personal representative.

We reverse the trial court's denial of the Lovatas' objections to the personal representative's actions with regard to the automobiles, telephone service and bank service charges, and we remand these issues to the trial court.

In their second point, the Lovatas contend the trial court erred in denying their objections because the personal representative did not properly account for assets of the estate by: 1) failing to list household goods and furniture in the estate's inventory; 2) failing to properly account for a promissory note owed to decedent, and 3) failing to list health insurance benefits paid to the estate in the final statement of account.

### 1) HOUSEHOLD GOODS AND FURNITURE

■ George Helfers, the former personal representative, did not list any household goods or furniture in the estate's inventory. This was technically improper. Mark Helfers testified the $40,000 listed as the value of the decedent's residence was intended to include the value of the contents of the residence. These contents were sold along with the real property. Mark Helfers testified he considered the contents "junk" and "worthless furniture." We find this evidence was sufficient to support the court's ruling on this objection.

■ Within thirty days after his appointment, an independent personal representative, who is not a successor to another representative *who has previously discharged this duty*, shall prepare and file in the court an inventory of property owned by the decedent at the time of his death, listing it with reasonable detail, and indicating as to each listed item, its fair market value as of the date of the decedent's death. Section 473.793 RSMo 1986. (Our emphasis).

George Helfers, and not Mark Helfers, filed the original inventory. George Helfers did not discharge his duty under § 473.793 RSMo 1986 because he failed to list, separate from the residence, the value of the contents of the residence. Consequently, when Mark Helfers became successor personal representative, he had a duty to list this personal property. He failed to do this. However, the Lovatas did not offer proof of any items of substantial value that should have been listed and appraised or that the real estate sale failed to include reasonable compensation for the personal property not included in the inventory. They did not prove how the estate would have benefitted from the inclusion of such items in the estate's inventory or how the estate suffered from the exclusion of such items. As such, while we do not condone George or Mark Helfers' actions, we find the trial court did not err in denying the Lovatas' objections to these actions.

### 2) PROMISSORY NOTE

■ At the time of his death, decedent held a promissory note from "C. Vaughn" for the purchase of a house located at 516 Euclid in Hannibal. The personal representative listed the note at $16,600 in the estate's inventory. Robert Heggie, an accountant assisting Mark Helfers, testified the actual balance of the note was $16,625.97. The final statement of account reflects monthly payments of $120.16 on the note from May 1989 to May 1993. It also lists the balance of the

note as $14,234.47 as of June 7, 1993. The amended final statement of account does not list the balance of the note. Heggie testified the amount of the final check received on the note, $15,222.84, is reflected in the balance of bank account # 0521009278 listed in the amended final statement of account.

The Lovatas contest the personal representative's failure to separate the principal from the interest paid on the note. However, the provisions of the probate code governing independent administration do not require such a separation. Although there are discrepancies between the amount due on the note and the amount actually paid, it appears the estate received more than the $16,600 apparently due. Thus, we find the trial court did not err in denying the Lovatas' objections to the personal representative's accounting of the note.

### 3) HEALTH INSURANCE

Mark Helfers admitted decedent had health insurance coverage through the Missouri Pacific Railroad and Medicare. He also admitted these providers paid some medical benefits, but that these payments were not shown on the statement of account. It is the obligation of a fiduciary to keep a complete and accurate account and if he does not do so all doubts and obscurities are resolved against him. *In Re Estate of Chrisman*, 761 S.W.2d 285, 288 (Mo.App.1988). We reverse the trial court's denial of the Lovatas' objections to the personal representative's failure to account for the receipt of medical benefits, and we remand this issue to the trial court.

In their third point, the Lovatas contend the trial court erred in denying their objections to the personal representative's failure to obtain a court order to take possession of the decedent's real estate. The Lovatas rely on § 473.263 RSMo 1986. However, that reliance is misplaced. Section 473.263 RSMo 1986 does not govern independent administration of an estate. The independent personal representative had authority to sell, mortgage, or lease decedent's real property without a court order pursuant to §§ 473.787.2 and 473.810(16) RSMo 1986.

Moreover, Article V, paragraph C of decedent's will provides:

C. The above named Executor, during his respective incumbency, shall have the right and power to sell, with or without procuring an order of the Probate Court therefor, any assets of my estate, at such prices and upon such other terms and conditions as my Executor in his sole discretion shall see fit. . . .

Thus, the personal representative had both statutory authority and express authority pursuant to decedent's will to sell the real estate without a court order. Point denied.

In their fourth point, the Lovatas contend the trial court erred in denying their objections to: 1) the personal representative's fees, and 2) the commission paid to the real estate agent.

An independent personal representative is entitled to reasonable compensation for his services. The statutory schedule of compensation prescribed in § 473.153 RSMo 1986 is prima facie evidence of reasonable compensation for services rendered. Section 473.823 RSMo 1986. The schedule of compensation, based on the value of the personal property administered and the proceeds of all real property sold *under order of the probate court,* is as follows: on the first $5,000, 5 percent; on the next $20,000, 4 percent; on the next $75,000, 3 percent, and on the next $300,000, 2.75 percent. Section 473.153.1 RSMo Cum.Supp.1993. (Our emphasis).

The successor personal representative listed his compensation as $10,538.68 in the original final statement of account. However, he listed his compensation as $7,723 in the amended statement of account. The $53,659.29 net proceeds from the sale of decedent's residence should not have been included in the calculation of the compensation since the residence was not sold "under order of the probate court." It appears these proceeds were not included in the second calculation that resulted in compensation of $7,723. The $7,723 does not exceed the minimum statutory compensation allowed for the administration of the personal property

of this estate. This objection was properly denied.

■ The Lovatas also contest the commission paid to a real estate agent for the sale of decedent's residence. The successor personal representative had express authority pursuant to decedent's will to sell any assets of the estate "at such prices and upon such other terms and conditions" as he saw fit in his sole discretion. As such, the payment of the commission, as a term or condition of sale of the real estate, was not improper. Point denied.

In their fifth point, the Lovatas contend the trial court erred in denying their objections to the personal representative's mismanagement of the estate in that he "subjected the estate to unnecessary IRS withholding because of his failure to report to a paying bank his employer ID number."

The Lovatas argue Landmark Bank withheld taxes on the interest income it paid on one of decedent's accounts because the personal representative failed to advise Landmark of his tax ID number. They claim the estate lost revenue on this unnecessarily prepaid tax. However, they have not alleged or proven a financial loss. Thus, we find no error.

■ In their sixth point, the Lovatas contend the trial court erred in denying their objections to excessive attorney's fees because the personal representative, in his capacity as an attorney, engaged in litigation that was not beneficial to the estate.

On October 25, 1989, the Lovatas filed a petition to determine title to $50,000 cash found in decedent's safe deposit boxes. On November 27, 1989, the personal representative filed a petition to determine title to the $405,604.97 in the jointly held accounts. On March 23, 1992, the parties settled their claims. The personal representative had authority to defend the Lovatas' claims and to prosecute his claims pursuant to § 473.810(15) RSMo 1986. He also had express authority pursuant to decedent's will to "compromise and settle any claims in favor of or against my estate upon such terms and conditions as he deems proper."

■ An independent personal representative's attorney shall be entitled to reasonable compensation for his services, but in no event shall the attorney's compensation be in excess of the minimum prescribed by § 473.153 RSMo 1986 without authorization by the court. Section 473.823 RSMo 1986. The setting of attorney's fees is within the sound discretion of the trial court and should not be reversed unless the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration. *Smith v. Estate of Harrison*, 829 S.W.2d 70, 73 (Mo.App.1992). The burden is on the appellant to show a clear abuse of discretion. *Id.* The trial court is considered to be an expert on the question of attorney's fees and may even fix the amount of attorney's fees without the aid of evidence. *Id.*

On April 23, 1992, Mark Helfers filed a petition for $39,186 in attorney's fees for services rendered on behalf of the estate *before* he became the successor personal representative. He provided the court with detailed billing statements. On April 28, 1992, the court granted his request for fees. We find there was substantial evidence to support the trial court's award.

■ In their final point, the Lovatas contend the trial court erred in taxing costs against them. They argue they produced substantial results for the estate by causing the personal representative to admit to an overpayment of statutory compensation and to reduce such compensation from $10,538.68 to $7,723. We agree. After reconsideration of the issues on remand, the court should also reconsider costs.

We affirm the trial court's denial of the Lovatas' objections with regard to the failure to list household goods on the estate's inventory, accounting of the promissory note, sale of the real property, the IRS withholding, and compensation of the estate's personal representative and attorney. We reverse the trial court's denial of the objections with regard to the missing automobiles, continued telephone service, bank service charges, and payment of medical benefits. We remand these issues to the trial court. Costs of this

appeal are assessed against the estate of Henry W. Stroh.

SIMON, P.J., and DOWD, J., concur.