Rhonda K. RITTER, Respondent,

v.

Dwight K. RITTER, Appellant.

Rhonda K. RITTER, Respondent,

v.

Dwight K. RITTER, Appellant.

Nos. WD 51113, WD 51414.

Missouri Court of Appeals,
Western District.

Submitted Jan. 11, 1996.

Decided April 16, 1996.

James D. Worthington, Lexington, for appellant.

Allen S. Russell, Kansas City, for respondent.

Before HANNA, P.J., and SMART and ELLIS, JJ.

SMART, Judge.

Dwight K. Ritter appeals from the trial court's judgment in this dissolution case, challenging the court's orders as to maintenance, child support and division of property. Rhonda Ritter filed a motion for attorney's fees on appeal, which was granted. Dwight Ritter also filed a notice of appeal from the order awarding attorney's fees on appeal. These cases have been consolidated.

The judgment is reversed and the case is remanded.

On June 4, 1976, Dwight ("husband") and Rhonda ("wife") were married. Husband has farmed many years. Wife worked part-time as an art teacher. She also operated a flower shop. During the marriage they had two children, Austin, born on April 11, 1979, and Ashlynn, born on July 23, 1980.

On July 16, 1993, wife filed a petition for dissolution of marriage. During the three-day hearing, wife testified that the irretrievable breakdown of the marriage occurred when she discovered husband had been engaged in seriously immoral and criminal conduct. The character of Husband's conduct is not disputed by the parties. Wife also testified that husband had a history of cruelty and physical abuse during the marriage.

Prior to trial, the parties agreed to a split custody arrangement involving Austin and Ashlynn. Wife was to have primary physical custody of Ashlynn and husband was to have primary physical custody of Austin. The parties agreed to maintain joint legal custody of both children. The trial court accepted the parties' agreement and incorporated it in the dissolution decree issued February 17, 1995. In the decree, the trial court awarded wife maintenance in the amount of $500.00 per month, retroactive to January 1, 1994, and child support in the amount of $829.00 per month. Wife's request for attorney fees was denied. On February 28, 1995, the trial court issued a corrected decree of dissolution to clarify some discrepancies in the initial decree. Husband appealed. Wife filed a motion for attorney fees on appeal, which was granted. Husband also appeals from this order of the trial court.

### Retroactive Maintenance

In Point I, husband claims that the trial court erred in awarding retroactive maintenance because the ruling was not statutorily authorized by § 452.335, RSMo 1994.[1] Husband argues that the trial court exceeded its authority and erroneously applied the law. This court will affirm the trial court's order unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Deference is given to the trial court's credibility determinations, and the evidence and permissible inferences to be drawn therefrom are viewed in the light most favorable to the trial court's order, disregarding all contrary evidence. *Boudreau v. Benitz*, 827 S.W.2d 732, 733 (Mo.App.1992).

Husband's reported taxable income varied greatly in 1993 from that of the several preceding years. In 1993, he reported income of $135,980. For 1990, 1991, and 1992, his income ranged between $12,000 and $16,000. Apparently, his 1993 income represented a capture of growth and appreciation in value of livestock and crops sold in that year.

The trial court awarded wife "maintenance against Respondent in the sum of $500.00 per month retroactive to January 1, 1994." Section 452.335 authorizes an award of maintenance in a divorce decree. However, this section has been interpreted by Mis-

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

souri courts to apply prospectively, not retrospectively. *Kessler v. Kessler,* 719 S.W.2d 138, 140 (Mo.App.1986); *C.M.D. v. J.R.D.,* 710 S.W.2d 474, 479 (Mo.App.1986). "[A]s a matter of law, a maintenance award ordered in the decree of dissolution cannot be made retroactive." *Woolsey v. Woolsey,* 904 S.W.2d 95, 98 (Mo.App.1995). Thus, the trial court's award of retroactive maintenance is reversed. Point I is granted.

### Child Support

In Point III, husband claims the trial court erred in its award of retroactive and prospective child support. Husband claims that the court: (1) improperly refused to admit or consider the Form 14 calculation of presumed child support proffered by husband; (2) failed to show its calculation of child support by preparation of a Form 14; (3) failed to acknowledge husband's unusual, nonrecurring sale of assets and payment of debts was not ordinary income for calculation of child support; (4) failed to acknowledge the additional income actually earned by wife as well as impute the income to her which she had (and has) the ability to earn; and (5) failed to make a proper calculation of child support for a split custody case. As a result of these alleged errors by the trial court, husband contends, the court's order is not supported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies the law.

■ Rule 88.01(e) establishes a rebuttable presumption that child support calculated pursuant to Form 14 is the amount to be awarded by the trial court. This presumption is overcome when the trial court makes a written or specific finding on the record that the Form 14 amount is unjust or inappropriate. *Scoggins v. Timmerman,* 886 S.W.2d 135, 139 (Mo.App.1994).

■ Wife presented two Form 14's for the trial court's consideration in view of the proposal for split custody—one form related to the support of the daughter, and one form related to the support of the son. On the first Form 14, wife, utilizing husband's 1993 income, calculated the amount of child support husband would be required to pay for support of his daughter, who is in her moth-er's custody, $1,146.00. The second Form 14 prepared by wife showed the amount wife would be required to pay for her son, who is in his father's custody, $117.00. After considering both Form 14 amounts, wife requested the court award her $1,029.00 per month child support. Husband also attempted to admit two Form 14's into evidence. However, the trial court rejected husband's forms because he based his income on an average of the 1990, 1991, and 1992 earned income, completely excluding the $135,980 of income husband reported in 1993. The trial court awarded wife $829.00 child support for her daughter. The court did not include a completed Form 14 in its order, nor did it refer to a Form 14 in the decree. The record does not reflect (1) the income amounts the trial judge used in calculating the child support award; (2) the Form 14 calculation; or (3) the manner in which the trial court considered the split custody circumstance in its determination.

Although we assume the trial court calculated child support in the correct manner under Rule 88.01, we are unable to review the court's calculation. We know the trial court did not disregard the 1993 income in determining husband's earning ability, but we do not know what the trial court determined husband's reasonable earning capacity to be. Therefore, we must reverse the award and remand the case to the trial court with instructions for the trial court to either make an award of child support based on the correct Form 14 amount as found by the court or make a specific finding that the Form 14 amount is unjust or inappropriate and to award the appropriate amount. *Woolridge v. Woolridge,* 915 S.W.2d 372, 381–82 (Mo.App.1996). In that case this court held that:

> [U]nder Rule 88.01 the trial court in all cases involving the award of child support is required to determine and find for the record the presumed **correct** child support amount calculated pursuant to Civil Procedure Form No. 14. The determination and finding of the amount can be done by either accepting for the record a Form 14 amount calculated by a party, or in the event it "rejects" the Form 14 amounts of

the parties as being incorrect, doing its own Form 14 calculation. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record, which we recommend as the most efficient and surest way of preserving the record, or by articulating on the record how it calculated its Form 14 amount. Required findings for the record can be done by separate written findings, findings in the judgment entry, or by oral findings on the record.

The comments to Form 14 describe in detail how to calculate the child support obligation in a split custody case as follows: ·

> In [split custody cases], the support amount is calculated by using two Forms 14. A Form 14 is completed for the number of children in the custody of one parent, using all income data and deductions for each parent, and disregarding the child(ren) in the custody of the other parent. The expenses that are in addition to the presumptive child support amount and that are entered on line 4b, 4c, 4d or 4e should be only for the child(ren) for whom the support amount is being calculated. In those instances where one parent is providing the costs of an item for all children, i.e., health insurance, the gross amount of such cost is to be prorated among the children for purposes of completing the form. The same process is then to be undertaken for the other parent. After completion of the multiple Form 14 worksheets, subtract the lesser amount from the greater. Use the difference between these two obligations as the child support order payable by the parent with the larger of the two obligations.

The court may inform counsel of the figures which the court believes are applicable, and ask counsel to complete the Form 14's. If the court determines the Form 14 amount to be inappropriate, the court may so find, and then determine an appropriate award. We need to have for the record the actual Form 14's considered by the court, or else the applicable figures must be apparent from the record. *Woolridge*, 915 S.W.2d at 382.

### Attorney's Fees

In Point IV, husband argues that the trial court erred in awarding wife $5,000.00 for attorney's fees on appeal because: (1) the court's primary order of dissolution shows no aggravating circumstances; (2) the trial court failed to conduct an evidentiary hearing of need; (3) the award was vindictive and without just cause or basis in law and inconsistent with the prior order as to attorney's fees in the dissolution; (4) the trial court failed to acknowledge or take judicial notice of wife's income and receipt of cash and assets during the separation of the parties and prior to order of dissolution; and (5) the trial court failed to acknowledge the amount of marital property apportioned to wife which shows she has the funds, money, property and assets sufficient to pay her fair, reasonable and necessary attorney's fees on appeal. Husband thus complains that the order is not supported by substantial evidence, erroneously applies the law, and improperly encourages wife to protract this litigation unreasonably and unnecessarily.

The trial court has broad discretion in awarding attorney's fees and the trial court's award should be affirmed unless the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration. *Matter of Stroh*, 899 S.W.2d 534, 541 (Mo.App.1995). The party challenging an award of attorney's fees bears the burden of showing that the award was "clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Ansevics v. Cashaw*, 881 S.W.2d 247, 250 (Mo.App.1994). The trial court is considered an expert on the issue of attorney's fees and may award such fees without the aid of evidence. *Stroh*, 899 S.W.2d at 541.

Here, wife's motion requested an award of attorney's fees in the amount of $10,000.00. The trial court awarded wife $5,000.00. Husband has failed to persuade this court that the award was "clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." Based on the record before us, we cannot say that the award was arbitrary. The trial court could have regard-

'ed husband as having significantly greater resources than wife. In awarding attorney's fees, the court may consider all relevant factors, including the financial resources of both parties. Section 452.355.1. "One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." *Ansevics*, 881 S.W.2d at 250, quoting *Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App.1992). The trial court could have reasonably concluded that wife needed assistance with her attorney's fees on appeal. Thus, the trial court did not err in awarding wife attorney's fees on appeal. Point IV is denied.

### Division of Property

In Point V, husband claims that the trial court erred in dividing the marital property. The trial court awarded husband certain marital property that he claims he did not own. Husband and wife agreed to have an appraiser place a value on all the property located on several properties farmed by husband, but they reserved the right to contest status and ownership of the property in question. The parties, in effect, stipulated only as to values. The appraisers appraised livestock and farm equipment found on the farm of husband and wife, the Roy Tempel farm, the Elmer Werning farm, the Kenneth Ritter farm, and the residence of husband and wife. Apparently, the appraisers listed and appraised every item they observed, whether or not they knew the identity of the owner. Also, we gather that in some instances they may not have personally observed each item listed, but were informed by wife that such an item existed. It is not clear that husband was the exclusive operator of farming operations on these farms, or that these farms contained only the equipment of husband and wife. Thus, this procedure created substantial risk that the property of someone other than husband and wife would be included in the list of appraised property. This procedure, as will be demonstrated in our discussion below, is not recommended for attorneys attempting to simplify matters. We will address each of husband's contentions as to the property separately.

1. The 1994 John Deere round baler. Husband first contends that the trial court erroneously included a round baler in the marital property awarded to husband. The round baler was included in the list of items appraised. The baler was valued at $11,500.00 on the appraisal. The appraiser did not testify at trial. Husband testified that he did not own the baler listed on the appraisal, nor did he know of the existence of the baler. Wife did not rebut husband's testimony. If the appraiser observed the baler somewhere (and we assume that he did), we do not know where. We do not know if it was on the property owned by husband and wife, or the property owned by husband's father, or one of the other farms. The evidence is not sufficient to support a finding that the baler was marital property. The trial court erred in awarding the baler to husband as marital property.

2. Austin's and Ashlynn's livestock. Husband contends that certain livestock belonging to his children was included in his property distribution, instead of being set aside to his children. Husband prepared Exhibit R as a list of the livestock that he owned. At the bottom of the exhibit, the following items were listed:

AUSTIN: Limousin Heifer = $550.00
Shorthorn Steer = $575.00

ASHLYNN: White Tennessee Walker = $400.00

During husband's testimony, he requested that the livestock contained in Exhibit R be set off to him as marital property. He did not mention to the court that some of the livestock belonged to the children. Thus, the trial court cannot be convicted of error for awarding this livestock to him.

3. 2 Krause brand discs and harrows. The list of property included a "Krause 21' disc w/harrow" and a "1987 Kruase 22' Disc with Harrow." Wife included a 21 foot disc and harrow because it appeared on husband's 1992 income tax depreciation schedule. She included a 22 foot disc and harrow because, she said, it appeared on a 1993 bank financial statement. Husband testified that the two items were one and the same, and that the reason for the discrepancy is that he was uncertain in his description of the property at different times.

The court treated these as two separate items of marital property and awarded husband both items at $2,000.00 each. Husband argues that it is logical that if there were two, it is likely that both would have been included in the bank financial statement. No evidence was presented as to why Mr. Ritter would be likely to have two similar disc and harrow implements. Wife had no evidence of the existence of two such implements other than the discrepancy in the description. We gather from the evidence, although it is less than entirely clear, that the appraisers never saw the implements, but that the implements were listed and valued based only upon the fact that there were slightly differing descriptions appearing on the financial statement and the depreciation schedule. We conclude that the probabilities and logical inferences outweigh the suggestion that there are two implements arising from the one-foot discrepancy in the description. Thus, we hold that the trial court erred in awarding two disc and harrow units to husband as marital property; the evidence supports the award of only one such unit.

■ 4. Kenneth Ritter's livestock. Husband contends that certain livestock awarded to him actually belonged to his father, Kenneth Ritter. Wife had no specific knowledge as to the livestock owned by husband. The appraiser appraised livestock found on husband's farm, as well as that found on Kenneth Ritter's farm. The livestock appraised included, *inter alia*, 31 steers and heifers, 1 Hereford bull, 1 Black Angus bull, 41 cows and calves, and 8 sows. Husband prepared a list of livestock which he claimed he owned. This list did not include the above listed livestock, which, according to husband and Kenneth Ritter, belonged to Kenneth. Husband also presented a certificate of ownership relating to only one of the bulls, showing the bull titled in Kenneth Ritter's name.

The record does not contain sufficient evidence to support a finding that husband owned the above livestock. The stipulation concerning the appraisal of the livestock was binding only for purposes of valuation, not ownership. Neither party proved ownership of the livestock in question. A presumption of ownership arises in favor of one with exclusive possession and control over personal property. *Ross v. Pendergast*, 353 Mo. 300, 182 S.W.2d 307, 309 (1944). However, we are unable to determine from the record whose farm the disputed livestock was located on. Nor was there any evidence that husband was the sole operator and proprietor of livestock operations on Kenneth's farm. While we sympathize with the trial court's difficulties caused by significant gaps in the evidence, we must review the evidence as we would in any other case. The record lacks evidence supporting the trial court's finding of ownership. Thus, we remand this issue to the trial court and instruct the court to receive evidence as to the livestock constituting marital property at the time of trial, to make findings as to such property, and to adjust the award accordingly, to the extent necessary.

5. Kenneth Ritter's farm equipment. Husband claims that certain farm equipment awarded to him actually belonged to his father. Wife introduced Exhibit 13 into evidence, which listed 43 items of equipment as to which ownership was disputed. This list was revised and certain entries were deleted and placed on the undisputed property list. The revised list was later offered by husband as Exhibit L–1 as an updated list of the disputed property. It is our understanding that the items listed below appeared on both lists, but Exhibit 13 was not furnished to this court. Exhibit L–1 is contained in the record. The disputed items are listed as follows:

a. John Deere 6 foot mower ($1,000.00);
b. John Deere grain cart ($2,250.00);
c. grain auger wagon ($300.00);
d. Brady grinder-mixer ($650.00);
e. 500 gallon LP tank ($700.00);
f. 24 foot field cultivator with harrow ($1,000.00);
g. 42" woven wire ($50.00);
h. wood hay bunks ($25.00);
i. John Deere 400 rotary hoe ($400.00);
j. portable air tank ($20.00);
k. H Frame press ($25.00);
l. quick hitch ($200.00);
m. hay fork ($25.00);
n. drain tile hose ($100.00);
o. bulk bine and auger ($500.00);
p. 6 foot stock tank with hog waterer ($50.00);
q. John Deere sickle bar mower ($200.00).

Kenneth Ritter testified that he owned the listed equipment. He produced a depreciation schedule listing four of the above items.

Kenneth prepared the schedule himself. There was no testimony that the schedule had ever been submitted to the Internal Revenue Service. No evidence was presented beyond Kenneth's testimony that Kenneth owned the items in question.

■ Wife's testimony was sufficient to support the trial court's finding of marital property as to most of the listed items. However, marital ownership of certain items is not supported by the record. Wife admitted lacking information as to the ownership of two of the listed items—the John Deere grain cart, valued at $2,250.00, and the 500 gallon LP tank, valued at $700.00, both of which, according to husband, were owned by his father. The ownership of these items as marital property is not supported by the record. Thus, we hold that the trial court erred in awarding the grain cart and LP tank to husband as marital property.

■ Next, the record does not support a finding of marital property as to the $300.00 grain auger wagon. Wife testified that the wagon appeared on the parties' 1993 financial statement. However, the only grain auger wagon we have located on the 1993 financial statement was valued at $4,000.00. Husband testified that he owns a much larger John Deere auger wagon (the one listed on the financial statement), but that the smaller wagon in question is owned by his father. Kenneth Ritter testified that he owned the smaller wagon. Since wife testified that she was basing her assertion of marital ownership solely on the financial statement, which appears to describe a different wagon, we conclude that the evidence is insufficient to show that husband owned the $300.00 grain auger wagon. Thus, we hold that the trial court erred in awarding the $300.00 grain auger wagon to husband as marital property.

■ The record also does not support the trial court's finding that husband owned the Brady grinder-mixer, valued at $650.00. Wife testified that the item was depreciated on the parties' 1992 tax return. Kenneth testified that the grinder-mixer belonged to him. In our careful review of the exhibits, we were unable to locate the item on the parties' 1992 depreciation schedule. Since wife failed to indicate that she had any knowledge of such item beyond the depreciation schedule, the evidence was insufficient to show that this item was marital property. Thus, we hold that the trial court erred in awarding the grinder-mixer to husband as marital property.

■ Wife testified that husband owned the remaining items on the above list. Husband and Kenneth testified that Kenneth owned these items. The trial court is free to believe all, part or none of any witness' testimony and is the sole judge of the credibility of the witnesses. *Kansas City Area Transp. Auth. v. 4550 Main Assocs.*, 893 S.W.2d 861, 866 (Mo.App.1995). Thus, the trial court was free to believe wife. Thus, we discern no error as to the remainder of the items.

We reverse the trial court's award of marital property to husband. The trial court erred with regard the amount of property awarded to husband in the amount of $17,400.00, which represents the values of the round baler, disc and harrow, grain cart, grain auger wagon, grinder-mixer and LP tank. On remand, the court shall modify the order to remove the foregoing items from the list of marital property awarded to husband. The court shall determine what adjustments are appropriate in the division of marital property in light of the foregoing.

### *Prospective Maintenance*

In Point II, which we now address out of order, husband complains that the trial court erred in awarding wife maintenance in the amount of $500.00 per month because the necessary and indispensable statutory prerequisites were not pled, proven or established by wife, nor found by the court. Husband contends the award was not supported by substantial evidence and is against the weight of the evidence.

■ It is true that the petition for dissolution does not specifically ask for maintenance to be awarded, although it asks for the court to make "such other orders as may be just and proper." It is also clear that the case was tried by both parties with maintenance in mind. The evidence regarding husband's misconduct was pertinent primarily as

a consideration related to maintenance. Because the issue of maintenance was tried by the parties, we find no error in the court entering orders with regard to maintenance. Rule 55.33(b); *Swanson v. Swanson,* 464 S.W.2d 225, 229 (Mo.1971). Husband argues that wife presented no testimony that she lacked sufficient property to provide for her reasonable needs or was unable to support herself through appropriate employment. Furthermore, husband claims that the court did not take into consideration the ability of husband to meet his needs while meeting the needs of wife.

 This court will affirm the trial court's order unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. This court reviews the evidence in the light most favorable to the dissolution decree, disregarding contrary evidence, and defers to the trial court even if the evidence could support a different conclusion. *Whitworth v. Whitworth,* 878 S.W.2d 479, 483 (Mo.App. 1994). The trial court is afforded wide discretion in awarding maintenance. *Id.* Maintenance awards are reviewed only for abuse of discretion. *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 953 (Mo.App.1993).

Section 452.335.1 grants the trial court the authority to award maintenance when it finds the spouse seeking maintenance (1) lacks sufficient property to provide for her reasonable needs, and (2) is unable to support herself through appropriate employment. Section 452.335.2 sets out the relevant factors that the court must consider in determining the amount and duration of the maintenance award. The factors in § 452.335.2 are only to be considered *after* the court finds that the threshold test, set forth in § 452.335.1, is satisfied. *Wallace v. Wallace,* 839 S.W.2d 354, 356–57 (Mo.App.1992).

 In the present case, wife testified at the hearing that she worked part-time as an art teacher and earned a gross income of approximately $1,084.00 per month. Wife does not draw a salary from her flower shop business, although she has withdrawn money from the business to meet her personal living expenses from time to time. Wife testified that her total monthly expenses amount to $3,999.95. From 1990 to 1992, husband earned between $12,000.00 and $16,000.00 per year from the farming business. In 1993, husband showed income of $135,980.00, resulting primarily from the sale of accumulated livestock and from farm crops. Husband further testified that the income earned in 1993 was used to pay marital debts and other living expenses.

 We conclude that it cannot be said that the threshold for maintenance was not reached in view of the evidence of Mrs. Ritter's income and monthly expenses. As for the amount of the maintenance award, review is difficult in view of the different views of the parties as to husband's income, and the lack of trial court findings as to husband's income. If the income attributable to husband's earnings is averaged over four years, the resulting mean figure is in excess of $35,000. We do not know exactly what the trial court determined husband's income or earning capacity to be, but there was evidence that husband's financial resources significantly exceeded wife's, and that wife lacked the resources to meet her own needs. We find no error in the fact that maintenance was awarded. As far as whether the evidence supported the amount of maintenance awarded, we believe that issue is best resolved in light of the adjustments in the division of marital property award and possible child support adjustments. Therefore, we vacate the award of maintenance. We do so in order that the trial court may have a free hand, on remand, to reconsider the maintenance award in the light of adjustments in child support or property division.

### Conclusion

The trial court's order is hereby reversed as to the award of retroactive maintenance. The award of child support, and the orders dividing the property are also vacated. The maintenance award is vacated, although no error was found, for further consideration in the light of any modifications as to child support and property division. The case is remanded to the trial court. The trial court shall calculate child support in accordance

with Rule 88.01, and either make an award of child support based on the Form 14 amount or enter a written finding that the Form 14 amount is unjust or inappropriate, and award the amount determined to be appropriate. The trial court shall determine the livestock constituting marital property at the time of the dissolution, and shall take into account the value of any livestock which has since been sold, and the value of any remaining livestock. The court shall also take into account the $17,400.00 of farm equipment value which was improperly included as part of husband's award in the property division, and adjust the division of property as it deems appropriate. The trial court shall determine the appropriate amount of prospective maintenance after considering the adjustments to child support and to the division of property.

The award of attorney's fees on appeal is affirmed. Each party shall bear its own costs on this appeal.

All concur.