Thomas A. SAMPLES, Appellant,

v.

Susan J. (Samples) KOUTS, Respondent.

No. WD 52790.

Missouri Court of Appeals,
Western District.

Oct. 14, 1997.

Kevin P. Rotert, Gladstone, for appellant.

Alison K. Blessing, Carol Clifton Sevier, Withers, Brant, Igoe & Mullennix, P.C., Liberty, for respondent.

Before ULRICH, C.J., P.J., and LOWENSTEIN and SPINDEN, JJ.

ULRICH, Chief Judge, Presiding Judge.

Thomas A. Samples (Father) appeals the trial court's judgment modifying his child support obligation and awarding attorney's fees to Susan J. (Samples) Kouts (Mother). He claims the trial court abused its discretion in (1) increasing his child support obligation to $798 per month; (2) ordering the county clerk's records amended to eliminate the child support credit reflecting previous overpayments; and (3) awarding Mother's attorney's fees. The judgment of the trial court is affirmed in part and reversed and remanded in part.

## FACTS

The marriage of Father and Mother was dissolved on April 26, 1979. Mother received custody of the two minor children born of the marriage subject to visitation by Father. Child support for both children was awarded in the amount of $150.00 per month paid through the Clerk of the Circuit Court of Clay County. The Decree of Dissolution was modified on January 3, 1986, changing child support to $75.00 per child payable every two weeks.

Following the modification in 1986, Father and Mother agreed privately to change the total child support payments from $150.00 to $200.00 per month. Father paid the $200.00 each succeeding month through the Clerk of the Circuit Court who recorded the extra $50.00 as a credit. Sometime in early 1993, the elder son enlisted in the military effective June 8, 1993.

In April 1993, Father, through his attorney, sent a letter to Mother suggesting the two enter into a joint stipulation acknowledging the elder son's enlistment and the cessation of child support for him. Father and Mother later privately agreed that Father would continue paying $200.00 despite the child's emancipation.

Father's attorney sent Mother an agreement in 1995 stipulating that both children were emancipated, but she refused to sign it. Father stopped paying child support in May 1995 and filed a motion for declaration of emancipation of the elder child in August 1995.

Father filed a Second Amended Motion for Declaration of Emancipation and Termination of Child Support on January 26, 1996, alleging that the older child became emancipated in June 1993 when he entered active military service. He requested that the child support of $75.00 for that child be terminated on May 25, 1996. Mother filed a First Amended Counter–Motion to Modify on March 7, 1996. The trial court modified Father's child support obligation for the younger son by increasing it to $798.00 per month on March 20, 1996. This appeal by Father followed.

## STANDARD OF REVIEW

■ Substantial evidence must support the trial court's judgment, and it cannot be against the weight of the evidence or contrary to law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence and credibility of the witnesses are viewed in the light most favorable to the trial court's decision. *Buchanan v. Buchanan,* 828 S.W.2d 946, 948 (Mo.App.1992). In the absence of a manifest abuse of discretion, an appellate court will not substitute its judgment for the trial court's. *Holmes v. Holmes,* 878 S.W.2d 906, 909 (Mo.App.1994).

## I. MODIFICATION OF CHILD SUPPORT TO $798 USING MOTHER'S FORM 14

■ Father's first complaint on appeal concerns the trial court's use of Mother's Form 14 amount to compute his child sup-

port obligation. The claimed error focuses upon the accuracy of Mother's statement of her income. Father claims that the trial-court erred in failing to reject Mother's Form 14 [1] for her failure to include income or to deviate from the presumed child support amount based upon Mother's Form 14 figures due to various factors. The trial court determines which Form 14 items and their respective amounts are properly included in the calculation based on the Directions for Completion of Form 14 and the evidence presented. *Hamilton v. Hamilton,* 886 S.W.2d 711, 716 (Mo.App.1994). The trial court must reject any Form 14 if any item is incorrectly included in the calculation, an amount of an item included in the calculation is incorrect, or the mathematical calculation is incorrect. *Woolridge v. Woolridge,* 915 S.W.2d 372, 378 (Mo.App.1996). Once a Form 14 is adopted, the trial court will presume the child support amount identified in Form 14 is correct. § 452.340.7, RSMo.1994; RULE 88.01; *Woolridge,* 915 S.W.2d at 378. Any party seeking a departure from an adopted Form 14 has the burden to show that the presumed child support amount is unjust or inappropriate after consideration of all relevant factors. *Elliott v. Elliott,* 920 S.W.2d 570, 577 (Mo.App.1996). If the trial court deviates from the amount in an adopted Form 14, the trial court or agency must explain why the deviation from the amount is appropriate by entering in the case a written finding or a specific finding on the record after consideration of all relevant factors. RULE 88.01; *Hamilton,* 886 S.W.2d at 716. If the trial court does not adopt either party's Form 14 but rejects them, then it has a duty under the rule to calculate its own Form 14. *Woolridge,* 915 S.W.2d at 381. A re-

viewing court will review the Form 14 used by the trial court to ensure it is accurate and supported by substantial evidence. *Id.* at 380.

## A. MOTHER'S THREE–MONTH GROSS INCOME FOR 1996 WAS NOT THE PROPER PREDICTOR OF HER FUTURE SALARY

Father first claims that the trial court erred in computing Mother's adjusted gross monthly income by basing her future income on income earned during the first three months of 1996 and by failing to include annual bonuses previously received by Mother. The record reflects that several discrepancies existed in Mother's Form 14. Her monthly gross income entry on line 1 of Form 14 as reflected in her W–2 statement, should have been listed as $2,658 rather than $2,337.00. [2] This discrepancy resulted from the trial court's reliance on Mother's monthly gross income in January through March of 1996, rather than her 1995 gross yearly income.

Mother testified that she believed her projected 1996 income would amount to $28,-044.00, falling between her 1992 and 1993 income level. This decrease in income was projected because she had not received bonus money in March of 1996. [3] Beyond that, the record is silent about her bonus money. [4] Father presented evidence of Mother's income from her place of employment for the prior five years. That income was as follows: $31,899.40 earned in 1995, $31,095.30 in 1994, $28,302.12 in 1993, $26,341.88 in 1992, and $25,806.20 in 1991.

---

1. To consider the issue of whether the court should deviate from the Form 14 presumed correct child support, the reviewing court must find that Form 14 is sufficiently accurate; otherwise, the issue of rebuttal cannot be reached. *Woolridge v. Woolridge,* 915 S.W.2d 372, 380 (Mo.App. W.D.1996)(stating "it is axiomatic that before there can be a 'rebuttal' of the presumed correct child support amount, the amount must, in fact, be correctly calculated").

2. Mother submitted a Form 14 dated March 19,-1996, that listed her income based on totaling her bi-weekly gross as reflected in her "1079"

form on three pay stubs for pay periods ending February 2, February 16, and March 1, 1996.

3. The exact nature of Mother's "performance bonus" is not reflected in the record. She testified that the performance was based on "branch profitability and performance" rather than on an individual basis. She testified that she had received her last bonus in March of 1995.

4. Mother's attorney attempted to have her testify as to her expectations regarding a future bonus. However, a hearsay objection was made and sustained.

 A trial court is required to consider a history of bonuses as part of average income unless there is evidence that the bonuses are unlikely to continue. *Rothfuss v. Whalen,* 812 S.W.2d 232, 239–40 (Mo.App. 1991).[5] In *Rothfuss,* evidence of three year bonus income was used despite testimony that the future bonus money was unlikely due to severe health problems. *Id.* The *Rothfuss* court found that the history of bonus income should have been included and that insufficient evidence existed to find that bonuses would discontinue. *Id.* A trial court has discretion, however, to ignore income history and instead look at a single year's income figure if the court finds that figure to be the most accurate predictor of a parent's income. *In re Marriage of Glueck,* 913 S.W.2d 951, 956 (Mo.App.1996). Thus, a single year's income may establish a sufficient predictor in the face of an income history. In the present case, however, the trial court did not consider a single year's income. The court relied on a three-month income to project Mother's annual income. The five-year history of Mother's income disclosed that each year showed an increased income. The evidence that she had not received bonus money in March 1996 with eight months of the year remaining was not sufficient to overcome the presumption that she would receive a bonus in 1996 as she had the five preceding years. Mother's Form 14 gross income statement of $2,337.00 is inaccurate, and the trial court's finding was contrary to the weight of the evidence. The case will be remanded to correct this error.

## B. THE TRIAL COURT SHOULD HAVE CONSIDERED FATHER'S FINANCIAL RESPONSIBILITY FOR HIS THREE CHILDREN IN COMPUTING HIS GROSS MONTHLY INCOME

Father claims next that the trial court abused its discretion by failing to deduct his support obligations for three minor children in his custody born subsequent to the divorce of the parties as well as for his niece who had been placed in his custody by court order.

The trial court found that the Directions For Completion of Form 14 notes did not entitle Father to a credit for the three minor children born of his second marriage for which he had financial responsibility.

 The Directions for Completion of Form 14, line 2.c., state that "the amount of financial responsibility a parent has for his or her children who are in the primary physical custody of that parent and who are not children involved in the action" is not to be used to complete the form "in a modification proceeding by a moving party who petitions to increase or decrease an existing order of support for the child or children who are the subject of the proceeding." The moving party in this case who seeks an increase in an existing order of support is Mother, not Father. Although admittedly Father originally requested to terminate his child support for the younger son, he withdrew it in his Second Amended Petition. Father's petition only requested the court to recognize that the elder son had become emancipated when he entered active military service. Father was the moving party regarding the elder son. Mother moved the trial court to increase Father's child support amounts regarding the younger son. As Mother was the moving party regarding the younger child, Father was allowed to submit for consideration his financial responsibility for his children who are in his primary physical custody and who are not children involved in this action. *In re Marriage of Bloom,* 926 S.W.2d 512, 517 (Mo.App.1996). The Directions for Completion of Form 14 provide that a parent may use "the amount of financial responsibility [the] parent has for his or her children who are in the primary physical custody of that parent and who are not the children involved in [the] action." The instructions provide that the "adjustment" may be used "in a proceeding to modify an existing order," except as earlier noted. Father was entitled to list the expenses of his three children as a credit on line 2c of the worksheet.

---

5. See *Helbling v. Helbling,* 541 N.W.2d 443, 447 (N.D.1995) ("Past income is generally the best

predictor of future income ...").

■ Although Father was his niece's legal guardian and in the process of adopting her, the Directions state that the adjustment applies to a party's natural or adopted children and not to stepchildren or other children in the party's care. Only after a competent court enters its decree of adoption does a person legally become the child of the petitioner. *Thompson v. Dalton*, 914 S.W.2d 811, 814 (Mo.App.1995). Father was not entitled to a credit on Form 14 for the expenses resulting for the care of his niece.

## C. THE EXPENSES OF RESIDENTS IN THE MOTHER'S HOME MUST BE CONSIDERED

Father next asserts that the trial court erred in calculating the younger child's financial needs. He argues that the allocation of one half of Mother's housing and utility expenses to the younger child was an abuse of discretion because other individuals lived in her home, benefitted from the home, and should have contributed to the expense of maintaining the home. Additionally, Father argues that Mother's own testimony regarding the child's automobile expenses rebutted her Form 14 figures.

Rule 88.01 requires a trial court to consider all relevant factors when determining the amount of child support to order. The record discloses that three other individuals, besides Mother and the younger child, were residing in Mother's home. They were Mother's boyfriend, a male friend of the parties' younger son, and the elder son who had returned home from military service. Mother testified that additional expenses in operating the home resulted because of the presence of the three adult income-producing individuals residing in her home. Mother testified that none of the other residents contributed any money to the household. According to Mother, the other residents lived there "free." During her testimony, she responded to questions about the expenses of operating the home as follows:

Q: Basically the rent or mortgage payments and the utilities are being used by four separate people in your household. Is that correct?

A: Correct.

Q: That would be Mr. Cease, that would be [your elder son], that would be [your younger son], and that would be yourself. Is that correct?

A: Correct. [My elder son] has his own telephone line and so does Mr. Cease.

Q: So telephone bill would solely be between you and [your younger son]. Is that correct?

A: Correct.

Q: But as far as living arrangements and the other utilities, those are being used by all four of you. Is that correct?

A: Correct.

Q: Would you say that those are being used in equal amounts between the four of you?

A: Mr. Cease and I are not at home near as much as the other two. I don't understand the question. Yes, we all take showers every day. Yes, we all eat every day.

Q: You all use lights in the house. You all use water in the house. You all use the trash service. You all have gas bills for heating the house. Is that correct?

A: Correct.

Q: [Y]ou've listed laundry and cleaning, is that correct, at $10.00?

A: That was a guesstimate on what I spend for laundry and cleaning, yes.

Q: And how much of that would be for [your younger child]?

A: I buy the soap, I buy the bleach, I buy the stuff to go in the dryer.

Q: Is that used then between the three of you at your residence, meaning [your elder son], Mr. Cease, and [your younger son], and yourself?

A: All four of us, yes.

■ This living arrangement resulted in a kind of "communal family" where expenses were intertwined and intermingled in various ways. Although understandably more complex, in fairness to the contributing parent, a trial court must require a party such as Mother to properly substantiate expenses attributable to the minor child. This is consis-

tent with the apportionment of household expenses between parents and children in the same residence. *In re Marriage of Cohen*, 884 S.W.2d 35, 39 (Mo.App.1994); *Hoffman v. Hoffman*, 870 S.W.2d 480, 485 fn. 1 (Mo.App.1994); *Allen v. Allen*, 811 S.W.2d 58, 59 (Mo.App.1991). The record reflects that the trial court did not obtain an accurate accounting of the expenses incurred by the various individuals in Mother's home in order to ascertain those expenses attributable to the younger child.

Mother submitted an income and expense statement admitted as exhibit 1 for consideration in determining child support costs. Mother's expense statement listed her expenditure for gas and oil as $40.00 and maintenance of $15.00 for the younger son's car. Both Mother and the younger child testified, however, that other than a $500.00 payment she contributed for repair of the transmission of her son's car, her son paid for all of those items from his own earnings. Mother's itemization of these expenses does not reflect her testimony. The trial court's calculation of the younger child's expenses was against the weight of the evidence.

## D. FATHER WAS NOT ENTITLED TO CREDIT FOR HEALTH INSURANCE PREMIUMS HE PAID FOR THE CHILDREN

■ Father argues that the trial court erred in not including on Form 14, line 8, $22 per month in health insurance premiums he pays for the younger child. Line 8 of the worksheet states, "[e]nter the amount of the health care insurance costs paid by the noncustodial parent for the child(ren) who are subject of this order." The record reflects that although Father continued to include the minor on his health insurance, Mother assumed that when he stopped child support payments in May 1995, he also stopped carrying the child on his policy. The record also reflects that as of the trial date, Father had not given Mother the health insurance card for the child to utilize the policy. Father's health insurance policy was a family policy covering six persons in his family and he did not incur any additional expense in covering the younger son. The $22 monthly

premium appears to be the total cost for insuring Father's non-emancipated children, including the younger son, on his insurance plan. The trial court did not err in not crediting the $22 to Father on Form 14.

## II. FATHER WAS NOT ENTITLED TO CHILD SUPPORT CREDIT.

In his next point on appeal, Father argues that the trial court erred in ordering the circuit clerk to amend the clerk's records to reflect no credit for his past overpayments of child support. The record is not clear regarding when the overpayments began or the exact amounts paid into the circuit clerk. Sometime after the 1985 modification order was entered requiring payment of $75 per child every two weeks, Father began paying more than$75 per child every two weeks. The circuit clerk's records showed a credit of $3,650, until May 1995, when Father stopped making payments. The issue presented is whether overpayments for court ordered child support payments paid through the clerk of the court are credit toward future child support payments owed by the non-custodial parent.

■ Voluntary overpayments of required child support made by the obligor in excess of that ordered by the court will not be credited against future child support payments. *Finley v. Morrow*, 697 S.W.2d 543, 544 (Mo.App.1985). An exception arises when the parties have agreed that the overpayments will be credited toward amounts due in the future. *In re Marriage of Simmons*, 636 S.W.2d 351, 353 (Mo.App.1982). An overpayment is presumed voluntary and does not accrue a credit for future support obligations. Mother alleges, and Father does not refute, that an oral agreement between the parties resulted sometime after the 1985 modification that Father would overpay $50.00 every two weeks—$200.00 rather than the court ordered $150.00—and did so until May 1995 because he believed that the expense of rearing a single child was comparable to the $200.00 amount he was paying Mother for child support. Even though Father knew the elder child was emancipated through military service in June

1993, he continued making the court ordered $75.00 payment for the child.

Father seems to argue that because the parties did not agree whether the overpayments would be credited, the court clerk's designation of the payments in excess of the court order as credit should be determinative. He consequently claims that he was justified in assuming that the overpayments would be counted as a credit for future child support obligations.

Father also argues that an exception to the general rule applies where child support payments made through a circuit clerk rather than directly to the custodial parent. He cites *Beeler v. Beeler*, 820 S.W.2d 657 (Mo. App.1991), for the proposition that if a custodial parent makes a court ordered payment to a circuit clerk for a child that has been emancipated, a credit automatically accrues for which the custodial parent can later request a rebate. In *Beeler*, the non-custodial parent alleged that child support overpayments for an emancipated child paid through the circuit clerk should have been credited. *Id.* at 662. The trial court denied the credit, and on appeal the denial was upheld. *Id.* The *Beeler* court denied credit because the payment record from the clerk of the court indicated the non-custodial parent had been reimbursed for those payments. By implication, Father argues, the *Beeler* court would have credited the overpayments if the non-custodial parent had not been reimbursed.

■ Whether an overpayment is an advance to be credited toward future child support obligations or a voluntary overpayment depends upon whether the parties agreed to credit the overpayment or whether it was provided in lieu of court ordered support. *Finley v. Morrow*, 697 S.W.2d 543, 544 (Mo. App.1985). Although Father was obligated by court order to pay $150, he could have petitioned the court in 1993 to alleviate that obligation due to the elder son's emancipation. He chose not to do so. The record reflects in the 1993 letter from Father's at-

torney regarding his son's entry into military service that the reason Father did not petition the court was because he believed the presumed child support amount for the unemancipated child would have been about the amount he was paying. Father continued to voluntarily pay the $150 under the existing court order. The 1993 letter, as well as the trial testimony, indicates that Father chose this method to save minimum court expenses and to avoid the possibility of a greater support obligation over the $150.

■ Father mischaracterizes the function of the circuit clerk. The circuit clerk's recording of the child support money received from Father for Mother is simply an accounting. It is not a legal determination as to the character of the monies paid into the account. The presumption remains that any payment above the court-ordered amount is not to be credited to future child support obligations, and the burden of proving the exception is the party's paying the sum. This premise is true regardless whether payment is made through the circuit court or directly to the custodial parent. The trial court, therefore, did not err in failing to credit the overpayments. Point two is denied.

## III. THE AWARD OF ATTORNEY'S FEES WAS PROPER

■ Father's final point asserts that the trial court improperly awarded attorney's fees to "offset" his child support payment deficiency.[6] He correctly states that child support is one type of award and litigation costs and attorney's fees are another type of award and that the awards are to be treated separately. *Dyche v. Dyche*, 570 S.W.2d 293, 296 (Mo.1978).

■ Section 452.355, RSMo.1994, authorizes a trial court to award a reasonable amount for attorney's fees incurred in maintaining or defending any proceeding under sections 452.300 to 452.415. A reviewing court should not disturb the award of attor-

---

6. The allegation is based on the trial testimony of Mother:

Q: Are you asking the Court to award you the sum of $2,736.37 as and for the attorney's fees you've incurred?

A: Yes, I am.

Q: And why is it you're asking the Court to award you attorney fees in this action?

A: To offset some of the moneys that I have not received since May of last year.

ney's fees unless the award is so arbitrary or unreasonable that the award reflects indifference and lack of proper judicial consideration so as to shock one's sense of justice. *Ritter v. Ritter,* 920 S.W.2d 151, 156 (Mo.App.1996); *Ansevics v. Cashaw,* 881 S.W.2d 247, 250 (Mo.App.1994). "Offsetting" Father's child support deficiency with an award of attorney's fees is not proper. Simply because Mother characterized the basis of her claim for attorney's fees to Father's lack of child support, however, does not bar recovery of attorney's fees. Mother testified that she was unable to pay her attorney's fees. Father testified that his gross monthly earnings was $6,970.00 per month while Mother testified that her gross earnings per month amounted to $2,337.00. One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse. *Meservey v. Meservey,* 841 S.W.2d 240, 248 (Mo.App.1992). The court is considered an expert on attorney's fees and may award such fees without the aid of evidence. *Ritter v. Ritter,* 920 S.W.2d 151, 156 (Mo.App.1996).

Father also alleges that the trial court did not properly consider Mother's refusal to sign the proposed stipulation agreement which, according to Father, required that he institute a motion to declare the elder child emancipated. A trial court is to consider the other party's conduct that required the attorney's fees and costs. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 655 (Mo. banc 1989). The record reflects that Mother refused to sign a stipulation recognizing the emancipation of the elder child. The stipulation also asserted the emancipation of the younger child who was not emancipated according to the statutory requirements for emancipation under section 452.340.5, RSMo 1994. Mother's refusal to sign Father's proffered stipulation under these circumstances is not a legitimate source of complaint for Father. The trial court, therefore, did not err in awarding Mother's attorney's fees. Point three is denied.

The judgment of the trial court is affirmed in part and reversed and remanded in part to the trial court with instructions consistent with this opinion.

All concur.